**UNITED STATES of America,
Appellant,**

v.

**Wilroy REID, Appellee.**

**No. 16809.**

United States Court of Appeals
Fifth Circuit.

Jan. 21, 1958.

Marcus A. Rowden, Atty. Dept. of Justice, Paul A. Sweeney, Chief Appellate Section, Dept. of Justice, Washington, D. C., Geo. S. Leonard, Acting Asst. Atty. Gen., Robert E. Hauberg, U. S. Atty, Jackson, Miss., for appellant.

John C. Satterfield, Russel D. Moore, III, Lee B. Agnew, K. Hayes Callicutt, Jackson, Miss., for appellee. Satterfield, Shell, Williams & Buford, Travis & Moore, Agnew & Slaymaker, Jackson, Miss., of counsel.

Before RIVES, BROWN and WISDOM, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

Now back after a full trial with evidence and fact findings bearing out the allegations of the complaint, the question tentatively determined by us, Reid v. United States, 5 Cir., 224 F.2d 102, requires final resolution. The question concerns the time a "claim accrues" under Section 2401 of the F.T.C.A.[1] for negligent medical advice and treatment resulting later in advanced tuberculosis.

The full record is not less favorable to the plaintiff than the unresolved inferences which we held beyond the reach of summary judgment. Indeed, it is stronger. What was, in the unavoidable uncertainties of a case not yet tried, somewhat guardedly put forward as a legal ruling by us, is likewise proved to have been well grounded. We adhere to our earlier decision and its implications.

The facts, overwhelmingly supported, found by the District Court may be briefly put. Reid, a civilian employee in the laboratory of the Army Hospital at Fort Benning, Georgia, was entitled to medical treatment under the Civilian Employees Health Program pursuant to Section II, Circular No. 81, Department of Army, 1948, Special Regulations 40–220–5, June 6, 1949. On March 7, 1949, after describing pains in his chest and back to his superior, Dr. Lowe, Chief of the Laboratory Services, Reid requested that X-rays be taken. This was done. On March 10, Dr. Lowe, at the time he gave to Reid the written report from the Radiologist which Reid never examined

---

1. The Federal Torts Claims Act, initially a composite piece of legislation, is now scattered throughout the Judicial Code, 28 U.S.C.A. §§ 1291, 1346, 1402, 1504, 2110, 2401, 2402, 2411, 2412, 2671–2680.

until months later, told him " * * * that there was nothing wrong with him, as shown by the X-ray report * * *." Actually the Radiologist had " * * * indicated that * * * [Reid] in 1949 had minimal tuberculosis * *." And consequently "Dr. Lowe was guilty of negligence in failing to advise * * [Reid] * * * in March 1949, that he probably had incipient tuberculosis." Had the X-ray report been properly evaluated, further examination and tests would have been undertaken to determine Reid's actual condition and proper treatment including prolonged rest would have been recommended. Therefore, "Dr. Lowe was negligent * * * in not making further examination and tests to determine his condition; and if he had done so he would have found that [Reid] was suffering with incipient tuberculosis and would have given him the proper treatment."

Reid, " * * * not knowing that he had incipient tuberculosis, did not seek hospitalization until his condition became worse, and in 1950 his condition having become worse and * * * [Reid] realizing that there was something wrong with him sought further examinations, and at that time it was determined that he had advanced tuberculosis and that treatment was immediately necessary." However, Reid " * * * did not discover Dr. Lowe's negligence, nor did he discover his physical condition until February 16, 1950; * * *."

This last finding leads to the precise issue now presented for the District Court, in that very sentence declared further: " * * * but as a matter of fact the negligence arose on or about March 10, 1949, when the report was delivered to Dr. Lowe." This is so because the suit here was not filed until November 29, 1951, and if time began at the moment of negligence—March 10, 1949—the suit was time-barred after March 11, 1951.

At the outset, the matter should be determined as it would were we construing another similar Federal statute prescribing the time in which suit must be filed. We do not approach[2] it with any begrudging niggardliness from a not too well concealed attachment for the vestigial strict construction of the sovereign's waiver of immunity—a concept which has been expressly repudiated almost whenever and wherever this and similar legislation has been before the Supreme Court. United States v. Yellow Cab Co., 340 U.S. 543, 550, 71 S.Ct. 399, 95 L.Ed. 523, 530; Indian Towing Co. v. United States, 350 U.S. 61, 76 S.Ct. 122, 100 L. Ed. 48, 1956 AMC 27; Rayonier v. United States, 352 U.S. 315, 77 S.Ct. 374, 1 L.Ed.2d 354; Canadian Aviator Ltd. v. United States, 324 U.S. 215, 65 S.Ct. 639, 89 L.Ed. 901, 1945 AMC 265; Fair v. United States, 5 Cir., 234 F.2d 288.

In that light, Urie v. Thompson, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1283, 11 A.L.R.2d 252, is more than a helpful analogy or illustrative application of a principle. If there is a difference between "claim accrues" in F.T.C.A. and the term "cause of action accrued" in Federal Employers' Liability Act, § 6, 45 U.S.C.A. § 56, it would not aid the Government for a "claim" would be at least as broad, if not broader, than the legalistic formula "cause of action." See Foote v. Public Housing Commissioner, D.C.Mich., 107 F.Supp. 270, 274. If Urie is not controlling, it is so because the disease was there silicosis while here it

---

**2.** Contrary to the Goverment's oblique suggestion neither what was said nor done in Simon v. United States, 5 Cir., 244 F.2d 703, 704, 705, looks in the other direction. With the time period prescribed in FTCA being construed as a qualification annexed to the right of action, 34 Am.Jur. § 186, pp. 150, 151, everyday principles—indeed "hornbook law" compelled the result there reached.

Expressions such as " * * * when such consent is given, the Courts are confined to the letter of the statute" or "exact compliance with the terms of consent is a condition precedent to suit" indicate no purpose to revive, if we could, any discredited notion of strict construction of the waiver of immunity, United States v. Alexander, 5 Cir., 238 F.2d 314, 317.

is tuberculosis. To think that two diseases, each operating immediately on the lungs, generally as the result of slow and imperceptible actions, are so different as to require distinct rules of law would only add confusion to what now unavoidably borders on metaphysical dialectic.[3] We agree with Judge Bruchhausen that while "It is true that the whispered warnings of approaching tuberculosis are more audible than the silent disintegration resulting from silicosis. * * * they, too, are the result of a condition over a period of time, rather than a point of time." Bradt v. United States, D.C.N. Y., 122 F.Supp. 190, 193, 1954 AMC 2230.

Moreover, the facts in this case support the implied findings[4] of the Trial Court which, upon long accepted concepts of statutes of limitations (whether on the right or remedy), fortify the application of the Urie doctrine. These relate to the fundamental nature of a "cause of action" or a "claim" asserted as a legal obligation. Ordinarily there is a coincidence of negligent act and the fact of some damage. Where that occurs the cause of action comes into being and the applicable statute of limitations begins to run even though the ultimate damage is unknown or unpredictable. But it is not the wrongful, i. e., negligent act, which gives rise to the claim. For there must be damage caused by it. Until there is *some* damage, there is no claim and certainly a statute prescribing the time in which suit must be filed (whether as a condition of right or remedy) can never operate prior to the time a suit would be permitted. 34 Am. Jur. Limitation of Action, §§ 160, 161; 11 A.L.R.2d 279; 74 A.L.R. 1317, 1319; 144 A.L.R. 209, 210. And, determinative as it is, as to *when* a claim comes into being under state law, this is recognized by Georgia[5] whose substantive law here controls, note 4, supra. The principle has been decisively applied in an F.T. C.A. case,[6] Carnes v. United States, 10 Cir., 186 F.2d 648.

---

3. See the annotations 11 A.L.R.2d 277, 74 A.L.R. 1317, 1319, 144 A.L.R. 209.

4. The Trial Court erroneously stated: "The Court finds as a fact that the law of Mississippi relative to the statute of limitations is the one that will govern the limitation of action, and * * * the cause of action * * * was not barred by the statute of limitations * * of Mississippi * * *." In the light of this careful trial judge's long attention to this case, its first appeal presenting the sole question of timely filing under 28 U.S.C.A. § 2401(b) and the considerable body of law accumulated between the first and second trials, it seems quite clear to us, and counsel on argument surmised as well, that this was merely an inaccurate statement of accepted principle. Since the claim arises only "under circumstances where * * * a private person, would be liable * * * in accordance with the law of the place where the act * * * occurred," 28 U.S.C.A. § 1346(b), it is the *state* law which determines *when*, if ever, a claim comes into being. But once it does the time in which the F.T.C.A. suit must be filed is controlled by the Federal Act. Bizer v. United States, D.C.Cal., 124 F.Supp. 949, 952; Foote v. Public Housing Commissioner, D.C.Mich., 107 F.Supp. 270,

273, 274; State of Md., to Use of Burkhardt v. United States, 4 Cir., 165 F.2d 869, 871, 873; Young v. United States, 87 U.S.App.D.C. 145, 184 F.2d 587, 590, 21 A.L.R.2d 1458.

5. Barrett v. Jackson, 44 Ga.App. 611, 162 S.E. 308, 309, "If the act is of itself not unlawful in this sense, and a recovery is sought only on account of damage subsequently accruing from and consequent upon such act, the cause of action accrues and the statute begins to run only when the damage is sustained; but, if the act causing such subsequent damage is of itself unlawful in the sense that it constitutes a legal injury * * *, and is thus a completed wrong, the cause of action accrues and the statute begins to run from the time the act is committed, however slight the actual damage then may be." And see also Silvertooth v. Shellenberger, 49 Ga.App. 133, 174 S.E. 365.

6. As it has been in others. For example, the time of the negligent act was long prior to injury in Indian Towing Co. v. United States, supra (failure to maintain a navigation light); Sommereset Seafood Co. v. United States, 4 Cir., 193 F.2d 631, 1952 AMC 697 (failure to mark the wreckage of the Battleship Texas);

Here, amidst all the medico-legal conceptual uncertainty, we know one thing positively. We know that immediately upon Dr. Lowe's giving Reid the wrong advice, *no* harm from it had yet befallen Reid. All that occurred was that Reid heard words—words which were wrong and negligently spoken—but without injurious consequences of any kind at the moment. Nor was there any an hour later, or the next day. Was there the following week? The next month? The next three months? Whatever the precise moment, we know absolutely that it was *some time* later—between March 10, 1949 and February 16, 1950—that the first injurious consequence of faulty advice could have occurred.

Assuming that Reid, as the plaintiff, had the burden of bringing himself within the time period qualifying the right, Simon v. United States, note 2, supra, 34 Am.Jur. § 450, pp. 352, 353, we think that the evidence satisfactorily established it, at least prima facie, so that it was then up to the Government to rebut it. Since the Trial Court was acutely aware of the significance of limitations, his express holding of a timely suit is without doubt an implied crediting of persuasive evidence that from March 10, 1949 down to a time just a few weeks before February 16, 1950, no perceptible change had occurred. Reid continued to feel the same as he had, experienced the same symptoms, continued on doing his regular work and following his ordinary regimen.

It was not until just shortly before he had the X-rays and tests made by Major Doty in February 1950 that he became worse. The inference that the adverse effects first began to make inroads on his body *after* November 28, 1949, certainly has as much record support [7] as one that it *must* necessarily have occurred between March 10 and November 28, 1949. To hold otherwise "would mean that at some past moment in time, unknown and inherently unknowable even in retrospect, [Reid] was charged with knowledge of the slow and tragic disintegration of his lungs; under this view [his] failure to diagnose within the applicable statute of limitations a disease whose symptoms had not yet obtruded on his consciousness would constitute waiver of his right to compensation at the ultimate day of discovery and disability * * *." Urie v. Thompson, 337 U.S. 163, 69 S.Ct. 1018, 1024, 93 L.Ed. 1282, at page 1292.

The claim was not for initial tuberculosis. It was that faulty medical advice interfered with proper tests and treatment. Obviously the acceleration of an existing condition into one of an aggravated state was "the product of a period of time rather than a point of time; consequently the afflicted employee can be held to be 'injured' only when the accumulated effects of the deleterious substance manifest themselves." Urie v. Thompson, supra, 337 U.S. 163, 69 S.Ct. 1025, 93 L.Ed. at page 1293.

Affirmed.

Stewart v. United State, 7 Cir., 186 F.2d 627, certiorari denied 341 U.S. 940, 71 S. Ct. 1000, 95 L.Ed. 1367; Stewart v. U. S., 7 Cir., 199 F.2d 517 (failure to fence in a magazine of military high explosives).

7. Unknown to him, Reid had long suffered from service connected tuberculosis. On discharge from the Navy October 4, 1945, the X-ray plates showed evidence of a faint infiltration in the first and second anterior interspaces peripherally on the right. The Radiologist's report of March 7, 1949, misread or misinterpreted by Dr. Lowe, reported "* * * there are stringy fibrous appearing markings seen in the first interspace on the right rather far peripherally. This is not unlike a fibrous linear marking of an acid fast etiology" which, all doctors agreed, described probable tuberculosis. The Veterans Administration administratively found "the claimant's tuberculosis as being due to his service in the United States Navy prior to October 1945" and since 1951, he has drawn total disability benefits from the Veterans Administration at the rate of $181 per month because of advanced tubercular condition.