**Lee QUINTON, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

No. 19354.

United States Court of Appeals
Fifth Circuit.

June 14, 1962.

Edward B. Winn, Dallas, Tex., Lane, Savage, Counts & Winn, Dallas, Tex., of counsel, for appellant.

Joseph McElroy, Jr., Asst. U. S. Atty., Dallas, Tex., Jerome I. Levenson, Atty., Dept. of Justice, Washington, D. C., William H. Orrick, Jr., Asst. Atty. Gen., Barefoot Sanders, U. S. Atty., John G. Laughlin, Attorney, Department of Justice, Washington, D. C., for appellee.

Before TUTTLE, Chief Judge, and HUTCHESON and WISDOM, Circuit Judges.

TUTTLE, Chief Judge.

This is a tort action against the United States brought pursuant to 28 U.S.C. § 1346(b). It is based on the alleged malpractice of certain Government employees in treating the plaintiff's wife at an Air Force base hospital in May, 1956. The District Court dismissed the complaint on the ground that it was barred

by the two year statute of limitations contained in 28 U.S.C. § 2401(b).

Under Section 2401(b), a tort claim against the United States must be asserted within two years after the "claim accrues." The primary question in this appeal is whether state or federal law determines when a "claim accrues" under that section. After resolving this choice of law problem, we must then decide whether, under the applicable law, a claim for malpractice accrued when the alleged negligent acts took place or when the injured party discovered or, in the exercise of reasonable care should have discovered, the existence of these alleged negligent acts.

The District Court held that state law controlled as to when the statute of limitations commenced to run, and it dismissed the complaint on the ground that, under the applicable state law, the plaintiff's claim against the Government accrued more than two years prior to the filing of suit.

We have concluded that the District Court erred in so holding. We hold (1) that federal law fixes the date upon which the Tort Claims period of limitations commences to run and (2) that, under federal law, a malpractice action against the United States can be maintained within two years after the claimant discovered, or in the exercise of reasonable diligence should have discovered, the existence of the acts of malpractice upon which his claim is based.

The facts giving rise to this litigation are simple and undisputed. In 1956, the appellant was serving in the United States Air Force and was stationed at Larson Air Force Base in the State of Washington. On May 17, 1956, while appellant's wife was under base hospital care, she was given three transfusions of RH Positive blood, although her correct blood type was RH Negative. It appears that the appellant and his wife did not learn of and, in the exercise of reasonable care, could not have learned of, this error until June 1959, during the wife's pregnancy. The complaint, which was filed on August 29, 1960, alleged that, as a "direct result of the transfusions of incompatible blood," appellant's wife gave birth to a stillborn child on December 17, 1959, and that she cannot safely bear other children without, in all probability, their being stillborn, blind, or mentally defective.

The Government moved to dismiss the claim on the ground that the suit was filed more than two years after the claim accrued and was therefore barred under the terms of 28 U.S.C. § 2401(b). By order dated August 29, 1961, the District Court granted the Government's motion. In its opinion, the District Court noted that, since the alleged negligent act which caused the injury, i. e., the blood transfusions, took place in the State of Washington, Washington law controlled on the issue of when the claim accrued. The Court's decision on this issue was based primarily on the fact that, under the Tort Claims Act, the United States is liable in tort only "under circumstances where * * * a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. §§ 1346(b) and 2674. Having decided that the law of Washington controlled the issue, the District Court then found that, under Washington law, appellant's claim accrued when the Government's alleged negligence took place on May 17, 1956. The Court therefore held that the action was barred by 28 U.S.C. § 2401(b).

*What law determines when a claim accrues under § 2401(b)?*

It must be conceded that the Government's argument on this point has the merit of logical consistency. Undeniably if state law controls as to *whether* a claim has accrued against the Government for the purpose of determining whether the claimant can sue under the Tort Claims Act in the first instance, it is reasonable to contend that state law should likewise govern as to *when* the claim accrued for the purpose of applying the two year period of limitations contained in Section 2401(b). But, however

much this view might meet with a logician's approval, we think there are compelling reasons for holding otherwise.

By enacting what is now Section 2401 (b), Congress clearly and unmistakably manifested its intention to have a single statute of limitations govern all tort claims asserted against the United States under the Tort Claims Act. While it was left to an analysis of state law to determine whether the Government was liable to the claimant in the first instance, Section 2401(b) was designed to insure that, once the Government's liability under the applicable state law was established, the FTCA claimant would have a fixed period of time within which to institute suit on his claim, regardless of where the acts giving rise to the liability occurred.

It is readily apparent, however, that the proposition urged by the Government and adopted by the District Court would seriously frustrate this clear Congressional policy underlying Section 2401(b). Obviously, if the various states' rules could severally determine when a claim accrued against the Government under Section 2401(b), the uniformity which Congress sought by enacting that section would be, for all practical purposes, a goal impossible of attainment. Differing state rules as to when a particular tort claim accrues would necessarily produce diverse decisions as to the effect of Section 2401(b). The mere alteration by a state of its rule as to the accrual of a particular claim would alter Section 2401(b) just as effectively as if Congress itself had formally amended that section. Thus, acceptance of the Government's view would permit the states to do indirectly what Congress clearly forbids them to do directly by increasing or decreasing their statutes of limitations on particular claims; and, contrary to the express purpose of Section 2401(b), claimants under the Tort Claims Act would have

varying periods within which to bring suit against the Government depending solely on where their claims arose.

Interestingly enough, the field of malpractice claims presents a striking illustration of the ill effects which would be produced were we to accept the Government's theory. A majority of states adhere to the rule that a claim for malpractice accrues at the time of the wrongful act which constitutes the malpractice.[1] In many of these states, however, exceptions have been engrafted upon this general rule. Thus, a number of states hold that, where the negligent physician continues to treat the injured patient after the initial negligent act, the statute of limitations begins to run from the date this treatment is terminated.[2] Still other jurisdictions permit the injured patient to assert his claim for malpractice in the form of an action for breach of contract,[3] or in the form of an action for fraud.[4] A number of states, on the other hand, recognizing the injustice of the majority rule, have expressly rejected it in favor of a rule which permits the injured party to sue within a certain period after he has discovered, or in the exercise of reasonable diligence should have discovered, the facts upon which his claim is based.[5] It is quite apparent, that application of these diverse rules under Section 2401(b) would produce diverse results as to the effect of that section, and would thereby discriminate among claimants solely on the basis of where the operative facts giving rise to their claims arose. We cannot believe that this is what Congress intended.

Nor is there any lack of precedent for the view that federal law should determine when a claim accrues under Section 2401(b). Strong support for such a view is found in those cases holding that federal and not state law determines whether an action for wrongful death has been timely instituted against the

---

1. See Lillich, "The Malpractice Statute of Limitations in New York and Other States," 47 Cornell L.Q. 339, 357.

2. Lillich, supra at page 360.

3. Lillich, supra at page 361.

4. Lillich, supra at page 364.

5. Lillich, supra at 357–60.

Government under the Tort Claims Act. The leading case here is State of Maryland, to Use of Burkhardt v. United States, 4 Cir., 165 F.2d 869, 1 A.L.R.2d 213. In that case, the following pertinent comments appear:

"If the reason and spirit of the statute be considered, there is even less reason to think that it could have been intended to adopt state statutes of limitations as a bar to recovery. Congress was creating a liability not theretofore existing on the part of the government. To have defined all of the tort rules under which liability could be established would have been an almost impossible undertaking; but standards of liability were necessary and Congress was compelled, as a practical matter, to adopt the principles and standards of local law in defining them. The matter of limitations, however, was a simple one which Congress could easily determine for itself; and the fact that the one year limitation was prescribed in the act and was to run from the enactment of the statute if that was later than the accrual of the cause of action, so that the plaintiff should have at least a year to sue, is inconsistent with any idea that the period was to be shortened because a shorter period was provided by state law." 165 F.2d at 871.[6]

The precise point here at issue was decided adversely to the Government in Foote v. Public Housing Commissioner, D.C.Mich., 107 F.Supp. 270 and Bizer v. United States, D.C.Cal., 124 F.Supp. 949. In the Foote case, the court held that federal law determined whether a cause of action for wrongful death under the FTCA accrued at the time of death or at the time the plaintiff was appointed administrator of the estate of the decedent. The plaintiff had contended that state law controlled the issue, and that, under state law, the cause of action did not accrue until he had been appointed administrator. In rejecting this contention, the court noted that "[t]o hold with plaintiff's contention on this point would, in effect, permit the circumvention by state law of the two-year limitation provided in [section 2401(b)]" 107 F.Supp. at 275.

The Bizer case, like the instant case, involved a claim for malpractice against the Government. The claim arose out of an examination which had been performed on the plaintiff by a Government doctor at a Public Health Service Hospital. This examination took place some four years prior to the filing of the suit. The complaint alleged that, during the examination, "the plaintiff's bladder was negligently punctured causing damage to his peripheral nervous system." The complaint further alleged that the plaintiff "did not discover that he had been negligently treated or the true cause of his injuries until well within two years of the bringing of the action."

It is interesting to note that, in Bizer, it was the Government which was taking the position that federal law determined when a claim accrued under Section 2401(b). This was because under the applicable California law, the statute of limitations on a claim for malpractice did not commence to run until the injured party knew or had reason to know of the injury. The Court rejected the plaintiff's contention in the following language:

"Thus the state law does control when the Tort Claims limitation begins to run in one very important sense. There must be in existence a state cause of action before the statute has anything to run on, or if you will, before the "claim accrues". State law governs the existence of this cause of action. But this is quite a different thing from the date from which the state statute begins to run. In the normal case the existence of the cause of action and the commencement of the peri-

---

6.  See also Young v. United States, 87 U.S. App.D.C. 145, 184 F.2d 587, 21 A.L.R.2d 1458.

od of limitation wll be simultaneous, but this is not necessarily so. This is the case here. The California cases do not hold that there is no cause of action in existence prior to the conditions which begin the running of the state statute. Indeed, the plaintiff brings this suit during the period in which, by his argument, the state statute would not yet have begun to run. *I hold that state law governs when the cause of action comes into existence but the federal law governs when the Tort Claims limitation begins to run.*" (Emphasis added.) 124 F. Supp. at 952.[7]

The simple fact is that state law respecting the accrual of a particular claim cannot be divorced from the state law fixing the period after accrual within which the plaintiff can bring suit on the accrued claim. In the area of malpractice claims, the question of when the statute of limitations should commence to run has long been a subject of heated controversy. If a state feels that an injured party's ignorance of the facts should not bar his claim, it may effectuate this policy determination in a number of ways. It can extend the statute for so many years, it can provide that a claim for malpractice "accrues" only upon discovery of the facts, or, like Alabama,[8] it can simply provide that an action for malpractice can be commenced within a certain period after discovery of the facts. Yet, if the Government's view were adopted, this state policy would be effective under the Tort Claims Act only if the second alternative were chosen. In all other cases, the undoubted state policy to extend protection to injured but innocently unaware claimants would be disregarded. Thus, the application of Section 2401(b) would turn entirely on the method chosen by the state to effectuate its policy in this area, even though those responsible for this choice undoubtedly gave no consideration to the effect which their decision would have on the Tort Claims Act.

We think such a result to be totally unjustifiable. Either the *entire* state scheme of limitations must be applied under Section 2401(b) or the state scheme must be ignored completely. Otherwise, we would often find ourselves following "state law," while reaching a decision completely at odds with a state's chosen policy. Since it is impossible, under the express language of Section 2401(b), to give the effect to state law in its entirety, we see no alternative but to disregard it completely.

The Government contends, however, that such a rule would be inconsistent with our previous decision in United States v. Reid, 5 Cir., 251 F.2d 691. We see no conflict in the decisions. In the Reid case, the plaintiff sued the Government for the alleged negligent failure of Government physicians to advise him that he probably had incipient tuberculosis after they had given him a medical examination and had taken X-rays of his lungs. The District Court dismissed the action on the basis of Section 2401(b), holding that the plaintiff's claim accrued at the time the plaintiff was examined and X-rayed. On appeal from the summary judgment rendered in favor of the Government, the plaintiff contended that the statute of limitations did not commence to run until he was aware of the Government's negligence, which was less

---

7. The Court ultimately held that the claim accrued under federal law when the plaintiff discovered his injury, which turned out to be more than two years prior to commencement of suit. The Court therefore dismissed the action under Section 2401(b).

8. The Alabama statute declares that a cause of action for malpractice must be commenced within two years after the negligent act. It is expressly provided, however, that "if the cause of action is not discovered and could not reasonably have been discovered within [the two year period], then the action may be commenced within six months from the date of discovery or the date of discovery of facts which would reasonably lead to such discovery * * *." In no event can the action be commenced more than six years after the negligent act. Ala.Code tit. 7, § 25(1) 1960.

than two years prior to the filing of suit. We reversed the judgment of the District Court and, citing Urie v. Thompson, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282, a case involving the question of when a claim accrues under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., we held that the plaintiff should be given an opportunity to prove that he did not discover the Government's alleged negligence until less than two years before commencement of his suit. Our decision on this first appeal of the Reid case is reported at 224 F.2d 102, and it seems clear that we there assumed federal law to be controlling on the question of when a claim accrues under Section 2401(b).

At the trial, Reid recovered a judgment against the Government and, this time, the Government appealed. On appeal, the Government reiterated its contention that Reid's cause of action accrued on the date he was examined and X-rayed. Again, we rejected this contention and, in so doing, made the following remarks:

"Now back after a full trial with evidence and fact findings bearing out the allegations of the complaint, the question tentatively determined by us * * * requires final resolution. The question concerns the time a "claim accrues" under Section 2401 of the F.T.C.A. for negligent medical advice and treatment resulting later in advanced tuberculosis.

"The full record is not less favorable to the plaintiff than the unresolved inference which we held beyond the reach of summary judgment. Indeed, it is stronger. What was, in the unavoidable uncertainties of a case not yet tried, somewhat guardedly put forward as a legal ruling by us, is likewise proved to have been well grounded. *We adhere to our earlier decision and its implications.*

\* \* \* \* \* \*

."In that light, Urie v. Thompson * * * is more than a helpful analogy or illustrative application of a principle. If there is a difference between "claim accrues" in F.T.C.A. and the term "cause of action accrued" in Federal Employers' Liability Act * * * it would not aid the Government for a "claim" would be at least as broad, if not broader, than the legalistic formula "cause of action." See Foote v. Public Housing Commissioner, D.C.Mich., 107 F.Supp. 270, 274. If Urie is not controlling, *it is so because the disease was there silicosis while here it is tuberculosis."* (Emphasis added) 251 F.2d at 692–693.

If the above quotations are not enough to show clearly that Reid decided that federal law governs as to when a claim accrues under Section 2401(b), the following footnote in the opinion disposes of any doubts one could have about the matter:

"* * * it is the *state* law which determines *when* if ever, a claim comes into being. But once it does the time in which the F.T.C.A. suit must be filed is controlled by the Federal Act. Bizer v. United States, D.C.Cal., 124 F.Supp. 949, 952; Foote v. Public Housing Commissioner, D.C.Mich., 107 F.Supp. 270, 273, 274; State of Md., to Use of Burkhardt v. United States, 4 Cir., 165 F.2d 869, 871, 873, 1 A.L.R. 2d 213; * * *." 251 F.2d at 694, footnote 4.

It seems clear that this Court, in the Reid case, merely adopted the rule laid down by the District Court in the Bizer case, supra. That rule, simply stated, is that federal law determines when the period of limitations contained in Section 2401(b) commences to run [i. e., federal law determines when a "claim accrues" within the meaning of Section 2401(b)], even though we look to state law to determine whether any claim has accrued against the Government which would enable the claimant to sue under the Tort Claims Act. In other words, we look to state law to determine whether the plaintiff's action is premature, but to

federal law to determine whether the action is stale. If the plaintiff has a cause of action against the Government under state law, federal law then controls as to whether the plaintiff has timely instituted his suit to recover on that cause of action.

The Government's contention with respect to the Reid case was undoubtedly motivated by the statement of the Court of Appeals for the First Circuit in Tessier v. United States, 1 Cir., 269 F.2d 305, 309, that:

"* * * the court [in the second Reid appeal] did not apply the Urie rule that the action accrued only when the plaintiff knew he had been injured, but rather, following Georgia law, sought the time when, unknown to either party, harm had in fact occurred and there was thus a complete legal wrong."

The Court then went on to hold that state law and not federal law determines when a claim accrues under Section 2401(b).

With deference to the Court of Appeals of the First Circuit, we think we have already demonstrated that its interpretation of our second Reid opinion is unsound; and, insofar as the Tessier case is contrary to the decision here reached, we must, for the reasons previously stated, reject it.[9]

*When does a claim for malpractice accrue under Section 2401(b)?*

The majority rule that a cause of action for malpractice accrues on the date of the negligent act, even though the injured patient is unaware of his plight, has been subjected to heavy criticism over the years. It has almost uniformly been condemned as an unnecessarily harsh and unjust rule of law. This storm of criticism has stimulated many states to alter the rule by legislation, while other states have left it to their judiciaries to fashion a proper remedy.[10]

Since this majority rule, so far as we can discern, has no significant redeeming virtue, we decline to apply it under Section 2401(b). Rather, we think by far the most sensible and just rule to be applied under that section is that a claim for malpractice accrues against the Government when the claimant discovered, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged malpractice.[11]

We believe such a rule is supported by the decision of the Supreme Court in Urie v. Thompson, supra. In Urie, the plaintiff sued his employer under the Federal Employers' Liability Act [45 U.S.C.A. § 51 et seq.] to recover damages on the ground that, while working for the employer, he was continually exposed to silica dust and thereby was caused to contract silicosis. Urie became aware of the existence of the disease sometime in 1940, and he filed suit on November 25, 1941. The FELA provides that the employee's claim must be asserted within three years after the "cause of action accrued." The employer claimed that since Urie had been exposed to silica dust since 1910, he undoubtedly contracted silicosis long prior to November 25, 1938, and thus that his "cause of action accrued" longer than three years before commencement of suit. In rejecting this contention, the Supreme Court stated:

"If Urie were held barred from prosecuting this action because he

9. We similarly reject Hungerford v. United States, D.C.Cal., 192 F.Supp. 581, where the Court, relying on Tessier, held that state law determines when a claim accrues under Section 2401(b).

10. See generally, Lillich, supra.

11. We are not impressed with the argument that it would take a Congressional enactment to effectuate such a rule. Courts in a number of states whose statutes, like section 2401(b), declare generally that a claim for malpractice must be commenced within a certain period after the "claim accrues," have construed those statutes to provide that a claim for malpractice accrues when the malpractice was or should have been discovered. See Lillich, supra at pages 358–59. Moreover, we think the Supreme Court's decision in Urie v. Thompson, discussed infra, is itself a sufficient answer to this argument.

must be said, as a matter of law, to have contracted silicosis prior to November 25, 1938, it would be clear that the federal legislation afforded Urie only a delusive remedy. It would mean that at some past moment in time, unknown and inherently unknowable even in retrospect, Urie was charged with knowledge of the slow and tragic disintegration of his lungs; under this view Urie's failure to diagnose within the applicable statute of limitations a disease whose symptoms had not yet obtruded on his consciousness would constitute waiver of his right to compensation at the ultimate day of discovery and disability.

\* \* \* \* \* \*

We do not think the humane legislative plan intended such consequences to attach to blameless ignorance. Nor do we think those consequences can be reconciled with the traditional purposes of statutes of limitations, which conventionally require the assertion of claims within a specified period of time after notice of the invasion of legal rights. The record before us is clear that Urie became too ill to work in May of 1940 and that diagnosis of his condition was accomplished in the following weeks. There is no suggestion that Urie should have known he had silicosis at any earlier date." 337 U.S. at 169–170, 69 S.Ct. at 1024–1025.

We think the quoted language to be equally apposite to the case at hand. We can see no sound reason for permitting the Government to escape liability here simply because its alleged negligence was such as to remain undiscovered and, practically speaking, undiscoverable, for many years thereafter. We do not believe that Congress "intended such consequences to attach to blameless ignorance." [12]

There is no contention here that the plaintiff or his wife knew or could have known of the alleged negligent transfusions prior to the time that the wife became pregnant in 1959. This being so, we hold that plaintiff's claim accrued no earlier than 1959 and that his action was, therefore, timely.

The judgment is reversed and the cause remanded to the District Court for further proceedings in conformity with this opinion.

JOSEPH C. HUTCHESON, Circuit Judge (concurring specially).

For the reasons hereafter stated, while I concur in the result reached by the majority and in the conclusions reached, that the question of when a tort claim accrues against the United States under 28 U.S.C. § 2401(b) is to be determined by federal law, and that under federal law the plaintiff's suit was brought within the time allowed by Section 2401(b),[1] I cannot concur in the characterization of the statutory two year period within

12. We agree with the Fourth Circuit's interpretation of the Urie case as expressed in that Court's recent decision in Young v. Clinchfield Railroad Co., 4 Cir., 288 F.2d 499, at page 503:
"The Urie case unquestionably demonstrates the [Supreme] Court's view that when the nature of the injury is such that it does not manifest itself immediately, the determination of when the cause of action accrued does not depend on when the injury was inflicted. To the contrary, the cause of action accrues only when the plaintiff has reason to know he has been injured."
See also Bizer v. United States, supra.

1. In addition to the cases cited by the majority in support of the rule that a claim for malpractice accrues against the Government when the claimant discovered, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged malpractice. I would cite the case of Federal Reserve Bank of Atlanta v. Atlanta Trust Co., 91 F.2d 283, at page 286, 117 A.L.R. 1160 (5th Cir. 1937) where it is stated:
"When the question is raised as to whether the action is barred by a statute of limitations, the true test to determine when the cause of action accrued is 'to ascertain the time when the plaintiff could first have maintained his action to a successful result'." (quoting from Mobley v. Murray County, 178 Ga. 388, 173 S.E. 680).

which such a claim must be begun or forever barred as a "statute of limitations."

It is established beyond question that Section 2401(b) is not a statute of limitations, within the legal definition of that term, Simon v. United States, 244 F.2d 703 (5th Cir., 1957); Compagnie Generale Transatlantique v. United States, 51 F.2d 1053 (2nd Cir., 1931); United States ex rel. Rauch v. Davis, 56 App. D.C. 46, 8 F.2d 907 (1925); but that it imposes as a jurisdictional prerequisite to recovery, a substantive condition, qualification, or restriction on both the right and remedy of the plaintiff and on the suability of the United States. Thus, the effect of the passage of more than two years after the claim accrues, without commencement of action upon it, is to leave the courts without jurisdiction of the action, whether the statute is pleaded or not, and to leave forever barred the right, the remedy, and the liability. Simon v. United States, supra; Hammond-Knowlton v. United States, 121 F.2d 192 (2nd Cir., 1941); Carpenter v. United States, 56 F.2d 829 (2nd Cir., 1932); Compagnie Generale Transatlantique v. United States, supra; United States ex rel. Rauch v. Davis, supra; Harrison v. The Beverly Lynn, 172 F.Supp. 719 (D.C.1959); Lomax v. United States, 155 F.Supp. 354 (E.D.Pa.1957); Florentine v. Landon, 114 F.Supp. 452 (S.D.Cal. 1953); Foote v. Public Housing Commissioner of the United States, 107 F.Supp. 270 (W.D.Mich.1952); Stubbs v. United States, 21 F.Supp. 1007 (D.C.Md.1938).[2]

The importance, in the case at bar, of recognizing and maintaining the distinction between the nature of the provisions of Section 2401(b) and that of statutes of limitation generally is threefold: First, when Section 2401(b) is recognized for what it is, state limitations statutes and decisions with respect to them are seen to be without bearing or relevance to the choice of law problem; Second, recognition of the essential nature of Section 2401(b) as a statute creating a federal jursidictional condition precedent to the maintenance of a tort action against the United States makes it even clearer that the determination of when a claim accrues is, and should be, determined by federal law; Third, confusion of the two concepts, whether or not the same result be reached in the case at bar under either, can only lead to confusion of thought in subsequent cases where the distinction may be more crucial than it is here.

I, therefore, base my concurrence not on the reasoning of the majority opinion with respect to limitation statutes, but on the conclusion that the statute, having created a new right and liability, Indian Towing Co. v. United States, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955); Fitzgerald v. Pan American World Airways, 229 F.2d 499 (2nd Cir., 1956),[3] should be reasonably construed so as not to deprive a beneficiary of the statute of the right conferred on any considerations pertaining to the construction of State statutes of limitation, and that the disposition made of the case below, based as it was on the authority of the Washington statute of limitations and the opinion of the Supreme Court of Washington in Lindquist v. Mullen, 45 Wash.2d 675, 277 P.2d 724 (1954) as to its construction was wrong and must be reversed.

---

2. See also The Harrisburg, 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358 (1886); Finn v. United States, 123 U.S. 227, 8 S.Ct. 82, 31 L.Ed. 128 (1887); Reid v. United States, 211 U.S. 529, 29 S.Ct. 171, 53 L. Ed. 313 (1909); Davis v. L. L. Cohen & Co., Inc., 268 U.S. 638, 45 S.Ct. 633, 69 L.Ed. 1129 (1925); Munro v. United States, 303 U.S. 36, 58 S.Ct. 421, 82 L.Ed.

633 (1938); Yankwich, Problems Under the Federal Tort Claims Act, 9 F.R.D. 143 (1949).

3. See also Heuser, Dalehite v. United States, A New Approach to the Federal Tort Claims Act, 7 Vand.L.Rev. 175 (1954).