**Settimo ACCARDI, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 68 Civ. 1214.**

United States District Court, S. D. New York.

Feb. 1, 1974.

Raymond L. Falls, Jr., New York City, for plaintiff; Anthony J. Constan-

tini, Richard I. Miller, New York City, of counsel.

Paul J. Curran, U. S. Atty., for the Southern District of New York, New York City, for United States of America; A. W. Fargo III, Asst. U. S. Atty., of counsel.

EDWARD WEINFELD, District Judge.

Plaintiff was imprisoned in the United States Penitentiary at Atlanta, Georgia, in October 1964, and continued in the custody of the defendant until April 1972, when he was released on parole. In September 1965 he suffered loss of vision in his right eye due to a detached retina, and at trial alleged that it was caused by defendant's negligence in (1) failing to diagnose and treat his condition in August 1965, when his loss of vision could have been prevented or ameliorated, and (2) failing to go forward with an operation on his right eye under a general anesthetic in September 1965, after he had an adverse reaction to a local anesthetic. In a decision announced in open court at the end of the trial, this court dismissed the plaintiff's complaint upon the merits for failure to sustain his claims of the defendant's negligence. Since there may be appellate review, it is also desirable to dispose of the defense of lack of subject matter jurisdiction based upon the statute of limitations.[1] Title 28 U.S.C., section 2401(b), the statute of limitations for the Federal Tort Claims Act, before its amendment in 1966 and as applicable to claims accruing before January 18, 1967, required that suit be instituted within two years after the claim accrued. This suit was begun on March 26, 1968.[2]

Plaintiff seeks to avoid this defense with two arguments. First, he points to the generally accepted standard for the accrual of claims in Federal Tort Claims Act cases, as set forth in Quinton v. United States:[3] "[U]nder federal law, a malpractice action against the United States can be maintained within two years after the claimant discovered, or in the exercise of reasonable diligence should have discovered, the existence of the acts of malpractice upon which his claim is based." Since plaintiff's position is that the defendant's agents were negligent in misdiagnosing his condition and in not proceeding with an operation by use of a general anesthetic, he contends that his claim did not accrue "until he *at least* had an opportunity to consult with an eye specialist completely unconnected with the negligent acts" and discover that the diagnosis and decision not to operate were incorrect. Plaintiff sets this date as June 1966. The government answers that plaintiff's claim accrued in August-September 1965, when he alleges the defendant's doctors failed on August 18 to diagnose and properly treat his eye and, after abandoning on September 8 a proposed operation under local anesthesia, failed thereafter to operate upon it under a general anesthetic, but in any event no later than the end of 1965 when, as plaintiff acknowledges, he was fairly certain that no further surgery would be provided for his right eye.

Second, plaintiff argues that during the period of his hospitalization section 2401(b) was tolled under the "continuous treatment rule," as recognized in Kossick v. United States.[4] The government answers that the rule is inapplicable in this case after September 1965, when plaintiff no longer received treatment for his right eye. Here plaintiff responds that while hospitalized from

1. *Cf.* Mann v. United States, 399 F.2d 672, 673 (9th Cir. 1968); Simon v. United States, 244 F.2d 703, 705 (5th Cir. 1957).

2. The defendant moved before trial to dismiss the complaint on the basis of 28 U.S.C. § 2401(b), but this court held that whether the continuous treatment rule tolled the statute of limitations in this case presented issues of fact, the determination of which could only be made upon a trial. Accardi v. United States, 356 F.Supp. 218 (S.D.N.Y. 1973).

3. 304 F.2d 234, 235 (5th Cir. 1962).

4. 330 F.2d 933 (2d Cir.), cert. denied, 379 U.S. 837, 85 S.Ct. 73, 13 L.Ed.2d 44 (1964).

December 1965 to July 1966 for other ailments, he expressed concern as to his left eye and received assurances from Dr. Hartner, an internist, under whose general care plaintiff had been since July 1, 1965; further, that the continuous treatment extended until plaintiff's discharge from the hospital in July 1966 because only then did he believe there was no danger to his life. Until his discharge he was treated for his ailments by Dr. Hartner, who also was allegedly negligent in treating his right eye, and under those circumstances, plaintiff argues, he could not be expected to bring suit against defendant based on Dr. Hartner's alleged negligence. As plaintiff admits, however, the hospital records do not indicate a connection between his hospitalization of December 1965 to July 1966 and his eye difficulties.

Upon all the facts, the court finds that plaintiff's cause of action accrued no later than the end of 1965, by which time plaintiff had knowledge of the existence of the basic facts upon which his claims of malpractice are based. In November 1965, upon plaintiff's instructions, the officials of the Atlanta Penitentiary forwarded to one of plaintiff's attorneys, with a copy to another of his attorneys, all medical information and records pertaining to plaintiff, which included a special evaluation of his eye condition and physical status. Contained therein was the statement, "the chances of surgery correcting the detached retina were poor," and that "his eye condition has progressed to where surgery is of no possible therapeutic value." The forwarding of this information to the attorney was initiated upon his request in a letter in which the attorney acknowledged that the medical authorities at the prison had decided not to operate because of plaintiff's condition; the medical information was intended for the purpose of obtaining an outside independent eye specialist to perform an operation with respect to plaintiff's eye condition. Furthermore in October 1965, plaintiff swore in an affidavit that "I have been informed by the doctor that it would be impossible to ever operate on my eye or, in fact, in his opinion, I should never expose myself to an operation that requires an anesthetic." Plaintiff concedes that by the end of 1965 he knew that no further surgery would be attempted upon his eye. It is clear that no later than that time he knew the basic facts upon which his present claim is advanced; further, that by this date he had full and ample opportunity for independent medical, as well as legal, advice.

Insofar as it is claimed that the limitation period was tolled under the continuous treatment rule, the evidence establishes there was no further or additional treatment to plaintiff's eye following the September 8, 1965 incident. While he was hospitalized from December 1965 to July 1966, it was for treatment unrelated to his right eye. The records establish he received no treatment during this period to either of his eyes. The fact that occasionally, upon his complaint that he saw mosquitos in his left eye, he was examined by the doctors with respect to such complaints, does not alter the situation. Whatever attention may have been given to plaintiff's eyes, it amounted to, at best, "examination or minor treatment to alleviate sequelae of the injury rather than for further cure," which the court in *Kossick* indicated does not come within the continuous treatment rule.[5]

In sum, plaintiff was fully cognizant of the pertinent facts upon which he charges negligent conduct at the very latest by the end of 1965, and the action having been instituted in March 1968, is barred by the statute of limitations. Accordingly, the complaint is dismissed upon the merits and also because the action is barred under the applicable statute of limitations.

5. 330 F.2d at 936.