Kathleen DUBOSE, Plaintiff-Appellee,

v.

KANSAS CITY SOUTHERN RAILWAY
CO., Defendant-Appellant.

No. 82–2307.

United States Court of Appeals,
Fifth Circuit.

April 16, 1984.

Mehaffy, Weber, Keith & Gonsoulin, James L. Weber, Robert A. Black, Beaumont, Tex., for defendant-appellant.

Provost, Umphrey, Doyle & McPherson, Walter Umphrey, Joseph R. Steele, Gregory Thompson, Port Arthur, Tex., for plaintiff-appellee.

Before REAVLEY, RANDALL and HIGGINBOTHAM, Circuit Judges.

REAVLEY, Circuit Judge:

Kansas City Southern Railway Company (KCS) appeals an adverse judgment in a wrongful death action brought under the Federal Employers' Liability Act (FELA) 45 U.S.C. § 51 et seq. (1976), complaining principally that the plaintiff's cause of action was time barred. We affirm, but remand for modification of damages.

## I

William DuBose worked for KCS as a railroad car repairman from approximately 1950 to 1977, when he retired. In the course of his work he was exposed to various irritants or noxious agents, including sulphur, grain dust, petroleum coke dust, fiberglass and silica. DuBose began to develop breathing problems during the late 1960's. He was first admitted into the hospital in January 1977 for treatment of shortness of breath, and was diagnosed as having chronic obstructive pulmonary disease. Later in the month DuBose's doctors performed a right and left sympathectomy and removed a small portion of his right lung. He was then diagnosed as having tuberculosis. After his release from the hospital, DuBose began to receive treatment for the tuberculosis, spending some time at a tuberculosis clinic. He retired in July 1977 due to his health and breathing problems.

DuBose's health deteriorated during 1979, when he was hospitalized five times.

During a December 1979 hospitalization, DuBose was diagnosed as having cancer of the lung. The carcinoma was discovered in the right upper lung, the site where earlier X-rays, beginning in January 1977, had revealed scarring. DuBose died on June 26, 1980. An autopsy confirmed the existence of diffuse pulmonary fibrosis, as well as a "poorly differentiated carcinoma—probably adenocarcinoma"—in the upper lobe of DuBose's lung.

Kathleen DuBose, DuBose's widow, filed this suit in September 1980, alleging that KCS's negligence caused DuBose to suffer injuries that resulted in his death. At trial, appellee's medical expert testified that the cancer could have been caused in either of two ways. First, pulmonary fibrosis, produced by the exposure to irritants, could have developed into scar carcinoma. Second, the cancer could have developed from the periphery of a tuberculosis scar.[1] KCS's medical expert opined that the cancer developed from a longstanding scar caused by tuberculosis.

The jury found for appellee on the issues of negligence and causation, returning a verdict against KCS for $200,000. On appeal KCS argues primarily the limitations question and its submission to the jury.

## II

■ Section 6 of the FELA provides in part: "No action shall be maintained under this chapter unless commenced within three years from the day the cause of action accrued." 45 U.S.C. § 56 (1976). The thrust of KCS's argument on appeal is that DuBose's cause of action accrued early enough to bar appellee's recovery. Since the statute does not define when a cause of action accrues, we look to case law for the answer.

■ Ordinarily, a statute of limitations begins to run at the moment a plaintiff's legally protected interest is invaded. This injury usually coincides with the tortious

---

1. Appellee's contention, supported by medical evidence, was that work conditions reduced Du-Bose's capacity to resist the tuberculosis bacteria.

act. *See, e.g.,* Restatement (Second) of Torts § 899 comments c & e (1977). Often, however, plaintiffs may be unaware that they have been injured, even though the tort has been completed. Courts thus developed the "discovery rule" to mitigate the harshness of applying statutes of limitations strictly in cases involving medical malpractice, occupational diseases, and other types of latent injuries.

The Supreme Court created and supplied the rationale for the federal discovery rule in *Urie v. Thompson,* 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949), a case brought under the FELA by a steam locomotive fireman suffering from silicosis. Application of the traditional accrual rule would have barred any recovery, affording "Urie only a delusive remedy" by charging him "with knowledge of the slow and tragic disintegration of his lungs" "at some past moment in time, unknown and inherently unknowable ...." *Id.* at 169, 69 S.Ct. at 1024. Since there was "no suggestion that Urie should have known he had silicosis at any earlier date," the Court held that his cause of action accrued " 'only when the accumulated effects of the deleterious substance manifest[ed] themselves.' " *Id.* at 170, 69 S.Ct. at 1025 (quoting *Associated Indemnity Corp. v. Industrial Accident Commission,* 124 Cal.App. 378, 381, 12 P.2d 1075, 1076 (1932)).

We extended the *Urie* discovery rule to medical malpractice actions under the Federal Tort Claims Act (FTCA) in *United States v. Reid,* 251 F.2d 691 (5th Cir.1958) (*Urie* approach employed to determine accrual date of plaintiff's claim of negligent advice and treatment), and in *Quinton v. United States,* 304 F.2d 234, 235 (5th Cir. 1962) (federal medical malpractice action accrues when "claimant discovered, or in the exercise of reasonable diligence should have discovered, the existence of the acts of malpractice upon which his claim is based"). Other federal circuit courts later applied the *Urie* approach to FTCA medical malpractice claims. *See United States v. Kubrick,* 444 U.S. 111, 120 n. 7, 100 S.Ct. 352, 358 n. 7, 62 L.Ed.2d 259 (1979); *Waits v. United States,* 611 F.2d 550, 552 n. 2

(5th Cir.1980). Courts understood the general rule in medical malpractice cases to be that the limitations period did not run until a plaintiff discovered both his injury and its cause. *Id.* 444 U.S. at 120, 100 S.Ct. at 358. In the five years prior to *Kubrick,* however, a few courts expanded the discovery rule to require that a plaintiff "know the legal implications of the facts, as well as the facts themselves, before the limitations period ... begin[s] to run." *Id.* at 121 n. 8, 100 S.Ct. at 359 n. 8. *See Stoleson v. United States,* 629 F.2d 1265, 1268 n. 3 (7th Cir.1980) (circuit courts recently had expanded rule to prevent claim's accrual until patient had reasonable opportunity to discover each element of his cause of action—duty, breach, causation, and damages).

In *Kubrick,* the Court disapproved of and cut back on the expanded discovery rule. "We are unconvinced that for statute of limitations purposes a plaintiff's ignorance of his legal rights and his ignorance of the fact of his injury or its cause should receive identical treatment." 444 U.S. at 122, 100 S.Ct. at 359. The Court reiterated the *Urie* rationale behind the discovery rule and approved its application to cases where the fact of injury may be unknown or unknowable and where the facts of "causation may be in the control of the putative defendant, unavailable to the plaintiff or at least very difficult to obtain." *Id.* Once a plaintiff possesses critical facts, however, legal and medical professionals are available to give advice to an injured person concerning whether he has been legally wronged. *Id.* While upholding the discovery rule as it had generally developed, the Court refused to extend the rule so as to defeat the limitations statute's "obvious purpose, which is to encourage the prompt presentation of claims." *Id.* at 117, 100 S.Ct. at 357. *See id.* at 125, 100 S.Ct. at 360–61.

### III

■ KCS contends that *Kubrick* should not be applied to this case. KCS argues that the *Kubrick* test—no accrual until

plaintiff knows the facts of injury and causation—is limited to medical malpractice cases under the FTCA, and that the *Urie* test—no accrual until injurious effects manifest themselves—applies to occupational disease cases under the FELA. We disagree and hold that *Kubrick* is not limited to the FTCA or to medical malpractice cases. *See Stoleson v. United States,* 629 F.2d 1265, 1268 (7th Cir.1980). The *Kubrick* rule, we think, represents the Court's latest definition of the discovery rule and should be applied in federal cases whenever a plaintiff is not aware of and has no reasonable opportunity to discover the critical facts of his injury and its cause. We do not view *Urie* and *Kubrick* as expressions of two distinct tests. Instead, the two cases represent a continuum. *Urie* signalled the inception of the discovery rule and *Kubrick* merely restated the rule while defining its outer limits. Both cases, however, reflect the same rationale.

Our cases have foreshadowed this statement of the law. *United States v. Reid,* 251 F.2d 691 (5th Cir.1958), involved a claim under the FTCA. Reid, who was experiencing chest pains, requested that X-rays be taken. Although the X-rays showed that Reid was actually suffering from incipient tuberculosis, his doctor negligently told him that nothing was wrong. The court saw no reason to avoid application of *Urie,* which concerned limitations under the FELA. "To think that two diseases [tuberculosis and silicosis], each operating immediately on the lungs, generally as the result of slow and imperceptible actions, are so different as to require distinct rules of law would only add confusion to what now unavoidably borders on metaphysical dialectic." *Id.* at 694. *See Lavellee v. Listi,* 611 F.2d 1129, 1131 n. 4 (5th Cir.1980) (medical malpractice claim under 42 U.S.C. § 1983) (assuming that federal standard for accrual of claims does not vary among FTCA, FELA and § 1983; "prior cases under one federal act have relied on cases under other federal acts concerning accrual of causes of actions").

We have also applied a discovery rule in pre-*Kubrick* cases that in essence is no different from the test enunciated in *Kubrick.* In *Aerojet-General Shipyards, Inc. v. O'Keeffe,* 413 F.2d 793 (5th Cir.1969), we applied the equivalent of *Kubrick* to a claim for compensation filed under the Longshoremen's and Harbor Workers' Compensation Act. We held that the injured employee's claim did not accrue until he learned that he suffered from rheumatoid arthritis and chronic pulmonary fibrosis, caused or aggravated by his exposure to sandblasting during his employment. "The limitations period for occupational diseases begins to run when the employee knows, or reasonably should know, that his condition is a disease which arose out of his employment." *Id.* at 795 (citing *Traveler's Insurance Co. v. Cardillo,* 225 F.2d 137 (2d Cir.), *cert. denied,* 350 U.S. 913, 76 S.Ct. 196, 100 L.Ed. 800 (1955)). We also think that the *Kubrick* test was encompassed in the accrual standard set out in *Quinton v. United States,* 304 F.2d 234 (5th Cir.1962), which relied heavily on *Urie.* We stated that "a claim for malpractice accrues against the Government when the claimant discovered, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged malpractice." *Id.* at 240. The word "acts," as used by the *Quinton* court, implies the fact of injury as well as the connection between that injury and its cause.

Moreover, we have characterized *Urie*'s holding in a manner that also describes the test stated in *Kubrick.* In *Emmons v. Southern Pacific Transportation Co.,* 701 F.2d 1112 (5th Cir.1983), an FELA case, the court noted that limitations does not run against a claimant, who "has no reason to know of his injury when it is sustained," until he "becomes aware that he has been injured and that his injury is work related." *Id.* at 1119 (citing *Urie* ).

▆ While we acknowledge that the *Kubrick* court did not discuss whether a claim accrued when a plaintiff should reasonably have been aware of the critical facts of injury and causation, we think that the *Kubrick* test implicitly contains this formu-

lation. *See, e.g., Davis v. United States,* 642 F.2d 328, 330 (9th Cir.1981), *cert. denied,* 455 U.S. 919, 102 S.Ct. 1273, 71 L.Ed.2d 459 (1982); *Barrett v. Hoffman,* 521 F.Supp. 307, 317 & n. 14 (S.D.N.Y. 1981), *rev'd on other grounds,* 689 F.2d 324 (2d Cir.1982). Under the facts of *Kubrick,* the plaintiff had actual knowledge of his injury and its causation. What was at issue was whether limitations would run while Kubrick awaited actual knowledge that his injury was *negligently* inflicted. The discovery rule developed to avoid mechanical application of statutes of limitations. Thus, we do not read *Kubrick* as setting an inflexible rule. Instead, we think that the Court intended the discovery rule to be applied in differing fact situations to effectuate the rationale behind the rule. In most cases a plaintiff will have actual knowledge of his injury no later than the time when he should have known he was injured. The discrepancy may be greater, however, between actual knowledge and constructive knowledge of the fact of causation. When a plaintiff may be charged with awareness that his injury is connected to some cause should depend on factors including how many possible causes exist and whether medical advice suggests an erroneous causal connection or otherwise lays to rest a plaintiff's suspicion regarding what caused his injury. *See Harrison v. United States,* 708 F.2d 1023 (5th Cir.1983) (plaintiff's medical records concealed or lost for several years; physicians' advice negated the causal connection); *Aerojet-General Shipyards, Inc. v. O'Keeffe,* 413 F.2d 793 (5th Cir.1969) (several physicians expressly rejected claimant's suspicion that his breathing difficulties were caused by or related to working condition); *see also Augustine v. United States,* 704 F.2d 1074, 1078 (9th Cir.1983) (*Kubrick* "cannot be applied mechanically to [medical malpractice] cases involving the failure to diagnose, treat, or warn"); *Young v. Clinchfield Railroad Co.,* 288 F.2d 499, 502–04 (4th Cir.1961) (silicosis action under FELA).

## IV

The accrual of DuBose's cause of action was an issue at trial. KCS proceeded on the assumption that *Urie,* and not *Kubrick,* governed the accrual date. DuBose's illness led to his hospitalization and the diagnosis of tuberculosis in early 1977, more than three years prior to the filing of this suit. KCS therefore contended that, under the *Urie* test, DuBose's entire cause of action was time-barred. *See O'Keeffe,* 413 F.2d at 795 n. 3.

Appellee DuBose contended that *Kubrick* applied and that the cause of action did not accrue until December 1979, the first time cancer was diagnosed. Kathleen DuBose testified that her husband first related his disease to his occupation at the time of the cancer diagnosis. She stated that DuBose thought that his earlier pulmonary problems were connected in some way to his wartime injuries.

KCS requested a jury instruction that separated the earlier pulmonary disease from the lung cancer. This was inappropriate where, under the evidence, the cancer may have been a more serious complication of the earlier disease. It was necessary for appellee to trace the cause of DuBose's lung cancer through the earlier pulmonary problems to the conditions that existed at DuBose's work place. KCS requested the following jury instruction:

[# 7] You are instructed that, under the evidence in the case, it is undisputed that Mr. DuBose had been suffering from pulmonary problems for many years. This pulmonary disease had manifested itself for a period in excess of three years prior to the plaintiff's filing suit on September 24, 1980. Suit for this prior disease is therefore barred by the statute of limitations and you should award no damages to the plaintiff relating thereto. On the other hand, the plaintiff claims that Mr. DuBose was diagnosed as having lung cancer in 1979. If you find for the plaintiff on negligence and if you find that the disease of lung cancer did not manifest itself until some period within the three year statute of limita-

tions then you may award damages but only such damages as you may find are attributable to the lung cancer and not to the pre-existing problems.

The district judge was clearly correct in refusing to instruct the jury that recovery for DuBose's pre-cancer pulmonary problems was barred as a matter of law. This instruction looked solely to manifestation of the diseases and told the jury to treat them separately. If a *Kubrick*-type test were made the basis for the inquiry, there was a fact question regarding when Du-Bose became aware that his disease was causally related to his employment. *See Emmons,* 701 F.2d 1112 (5th Cir.1983); *O'Keeffe,* 413 F.2d 793 (5th Cir.1969). KCS's Requested Jury Instruction No. 7 was properly denied.

■ At first look we were concerned by the district court's modification of KCS's Requested Jury Instruction No. 10.[2] The instruction given directed the jury to consider only the disease of cancer. This instruction effectively took the limitations issue out of the case, since KCS did not claim that DuBose was or should have been aware of the critical facts of his lung cancer before late 1979, a time clearly within the limitations period. KCS, however, failed timely to object to the court's language that focused the jury's inquiry on the disease *of cancer.* The district court charged the jury:

> [T]he defendant contends that the plaintiff's claim is barred by the statute of limitations. The statute of limitations in a case such as this provides that an action for damages as a result of disease must be brought within three years from the date of the accumulated effects of the disease manifest itself [sic]. Therefore if you find from a preponderance of the evidence that the effects of the plaintiff's husband's *disease of cancer* which caused his death had manifest itself [sic]

more than three years before plaintiff filed her lawsuit, September the 27th, 1980, then you would find for the defendant and against the plaintiff. If you do not so find, of course, you would not find against the plaintiff on the question of limitations. (emphasis added).

After the jury began its deliberations the district court heard the objections of counsel. Counsel for KCS stated: "To the extent· that the court did not include in its instructions to the jury those requested charges of the defendant which have been filed numbered one through ten, we would object to the charge for that reason." After voicing this general objection, KCS then made more specific objections. First, the charge failed to separate the pre-cancer disease from the cancer. Second, the charge failed to instruct that recovery was barred for the pre-cancer disease. These objections relate to the district court's denial of KCS's Requested Jury Instruction No. 7. Third, the court should have instructed the jury that a cause accrues when *symptoms* are manifested, not necessarily when a disease is diagnosed. This objection reflects the court's modification of KCS's Requested Jury Instruction No. 6.[3] KCS, however, failed to draw the court's attention to the limitations charge's focus on cancer. *See* Fed.R.Civ.P. 51; *Industrial Development Board v. Fuqua Industries, Inc.,* 523 F.2d 1226, 1237–38 (5th Cir.1975); *Klapmeier v. Telecheck International, Inc.,* 482 F.2d 247, 255 (8th Cir.1973). KCS simply did not object to any failure to give the jury the fact question of when Du-Bose's entire cause of action accrued.

Except in unusual cases, "failure to object ordinarily bars later challenge to an instruction." 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2558 at 671 (1971). *See id.* § 2553 at 639–42. We find that the infirmity in the jury instruction on

---

**2.** "If you find that Mr. DuBose's disease manifested itself more than three years prior to September 24, 1980, then you will find for the defendant."

**3.** "You are instructed that the statute of limitations begins to run and the three year time period for filing suit is commenced when the symptoms of the disease manifest themselves, not necessarily when a diagnosis is made."

limitations does not rise to the level of plain error. *See id.* § 2558 at 671–72.

We also note that KCS may have invited the error by separating DuBose's pre-cancer lung disease from the lung cancer and by requesting a jury finding only on the latter. KCS consistently maintained that recovery for any fibrosis or tuberculosis was barred as a matter of law. KCS, however, failed to recognize and correct the error into which it led the court.[4]

## V

 KCS contends that appellee presented no evidence to show that KCS was negligent and that DuBose's exposure to hazardous substances could cause cancer. Therefore, KCS argues, the district court erred by submitting the issues of negligence and causation to the jury. The record, however, is replete with testimony that DuBose was exposed to a variety of irritants. Appellee's expert, Dr. Joe De-Leon, testified that DuBose's exposure to these irritants produced scarring in his lung and chronic bronchitis and reduced his ability to withstand tuberculosis infection. Dr. DeLeon also traced DuBose's cancer to the fibrosis or tuberculosis, which in turn he causally attributed to DuBose's working environment. Moreover, the record contains evidence of KCS's negligence. Reasonable minds could clearly differ on the critical issues of causation and negligence, which the trial court properly submitted to the jury.

There are two matters that require modification of the damages award. Appellee and KCS stipulated that KCS was entitled to a credit for 80% of funds expended by KCS's insurance carrier for DuBose's reasonable and necessary medical expenses. At oral argument appellee agreed that she was bound by the stipulation.

 Also, the jury was erroneously instructed that it could consider "the reason-

able amount of expenses for funeral and burial for the deceased ...." Funeral expenses, however, may not be included in damages awarded in FELA actions. *See Ivy v. Security Barge Lines, Inc.,* 606 F.2d 524, 526 & n. 4 (5th Cir.1979) (en banc), *cert. denied,* 446 U.S. 956, 100 S.Ct. 2927, 64 L.Ed.2d 815 (1980); *Cities Service Oil Co. v. Launey,* 403 F.2d 537, 540 (5th Cir. 1968).

The cause is remanded to the district court for modification of the damages.

Affirmed but, in part, reversed and remanded.

---

**4.** A party who requests an instruction has invited any error in it and cannot complain if the instruction, or one substantially like it, is given. But if the party recognizes the error into which he has led the court, and seeks to rectify it by objection when the instruction is given, he may have appellate review of the correctness of the instruction.
9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2558 at 675–76.