**Frank R. CICCARONE, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

**No. 72-2043.**

United States Court of Appeals, Third Circuit.

Argued Sept. 11, 1973.

Decided Oct. 18, 1973.

As Amended Nov. 19, 1973.

See also, D.C., 52 F.R.D. 142.

N. Carl Schwartz, Merion, Pa., for plaintiff-appellant.

Robert E. J. Curran, U. S. Atty., James C. Sommar, Asst. U. S. Atty, Philadelphia, Pa., for defendant-appellee.

Before McLAUGHLIN, VAN DUSEN and ROSENN, Circuit Judges.

OPINION OF THE COURT

GERALD McLAUGHLIN, Circuit Judge.

This is an appeal from a judgment of the district court for the Eastern District of Pennsylvania denying plaintiff's claim for relief under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2401(b) and 2671–2680 for alleged medical malpractice on the part of certain physicians employed by the United States of America at the Veterans Administration Hospital, Coatesville, Pennsylvania (V. A. Hospital). The facts which are pertinent to this appeal are as follows.

In September of 1945, plaintiff-appellant (appellant) was on active duty with the United States Army. On one occasion during this time while appellant was travelling in an army jeep, an accident occurred and he was thrown from the vehicle. Shortly thereafter, he developed a case of acute meningitis which resulted in his hospitalization until December 8, 1945. In 1956, 1961 and 1962 he was confined as an inpatient for approximately thirty days in non-governmental hospitals for recurrent bacterial meningitis. On May 8, 1963, he was admitted to the above mentioned V. A. Hospital for observation and evaluation. The purpose of that hospital stay was to determine possible causes of the recurrence of meningitis and to develop a course of treatment which might have prevented such recurrences.

Following appellant's temporary discharge from the V. A. Hospital on June 28, 1963, a V. A. Hospital staff neurologist prepared an elaborate and detailed written plan which purported to ascertain the causes of the meningitis attacks. In view of the fact that appellant had suffered numerous attacks of sinusitis, the neurologist deemed it essential to explore the possibility that bacteria was being transmitted from the sinuses to the area where meningitis is found by way of a cerebro-spinal fluid leak. In order to make such a determination, the neurologist's plan suggested a three-phase diagnostic procedure: (1) the appellant's nose was to be packed with surgical gauze; (2) a methylene blue dye was to be injected into his spinal column; and (3) if the blue dye were subsequently to appear on the gauze, it would have indicated the existence of a passage through which bacteria was entering the spinal column and corrective surgery would then be used in order to block the passage. The plan was submitted to and approved by the V. A. Hospital's Chief of Staff.

On July 14, 1963, the proposed plan of treatment was explained to appellant and his wife and they consented to have the procedure performed although they did not execute any formal written authorization. On the morning of July 16, 1963, the diagnostic procedure was carried out in accordance with the approved plan. Appellant rested on the operating table for a short period of time following the completion of the procedure. He then was helped off the operating table, stepped on to the floor, reached for his shoes, fell and struck the bridge of his nose on the floor causing bleeding and a mild fracture of the left nasal bone. At approximately 4:00 P.M. on July 16, 1963, appellant complained of a back pain at the site of the injection of the methylene blue dye and numbness of his legs. He also stated that he was unable to walk because of the severity of the pain. The next day, appellant was unable to walk or stand. He had a feeling of "heaviness" and a burning sensation throughout the lower portions of his body. His lower extremities were flaccid and he could not raise either foot. His condition persisted until September 15, 1963 at which time some improvement was noticed. Thereafter, on November 1, 1963, he was discharged from the V. A. Hospital and he was advised to continue physical therapy at home.

Following appellant's discharge from the V. A. Hospital on November 1, 1963, he sporadically visited its outpatient department for treatment. Between November 1, 1963 and July 8, 1965, he also consulted several government and non-government physicians concerning his condition. On July 7, 1965, appellant informed the V. A. Hospital neurologist then assigned to his case that he was dissatisfied with the methylene blue dye procedure performed on him and that the procedure had caused a drastic change in his physical condition. Although the neurologist assured appellant that the methylene blue dye method was an accepted diagnostic procedure which had been performed for many years, the neurologist never claimed that appellant would recover completely.

On September 29, 1967, appellant filed suit. A nonjury trial was held to determine the issue of liability. The trial

court held, inter alia, that (1) the Federal Tort Claims Act, 28 U.S.C. § 2401(b) which provides for a two year period of limitations barred appellant's claim for relief because of his failure to institute his cause of action within the statutory period and that any circumstances which occurred after July 16, 1963 were plainly insufficient to justify the tolling of the statute of limitations; and (2) there was no malpractice or negligence on the part of the United States acting through its agents, servants and employees at the V. A. Hospital.

■ The threshold question presented for review by this court is whether the limitation of actions provision of the Federal Tort Claims Act barred recovery for alleged medical malpractice by the agents, servants or employees of the United States at the V. A. Hospital. Section 2401(b) of the Federal Tort Claims Act provides that "a tort claim against the United States shall be forever barred unless it is presented to the appropriate Federal agency within two years after such claim accrues * * *." The allegedly negligent act of the United States occurred on July 16, 1963 when methylene blue dye was injected into appellant's spinal column. His suit was commenced on September 29, 1967, more than four years after the date of his alleged injury.

■ In a cause of action founded on alleged medical malpractice, it is incumbent on the trier of fact to determine the point in time when the "claim accrues". In making such a determination, principles of federal law, not state law, are to be applied. Mendiola v. United States, 401 F.2d 695 (5th Cir. 1968); Kossick v. United States, 330 F. 2d 933 (2d Cir. 1964); Hungerford v. United States, 307 F.2d 99 (9th Cir. 1962). The two year statute of limitations begins to run when a trauma coin-

cides with the negligent act and some damage is discernible at the time, even though the ultimate damage is unknown or unpredictable. Beech v. United States, 345 F.2d 872 (5th Cir. 1965); Keleket X–ray Corporation v. United States, 107 U.S.App.D.C. 138, 275 F.2d 167 (1960); Tinkoff v. United States, 211 F.2d 890 (7th Cir. 1954). Damages are discernible when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged malpractice. Quinton v. United States, 304 F.2d 234, 236 (5th Cir. 1962).

However, there are instances where the statute will be tolled. For example, in Urie v. Thompson, 337 U.S. 163, 170, 69 S.Ct. 1018, 93 L.Ed. 1282 (1963), it was held that "blameless ignorance" on the part of the claimant would justify the tolling of the statute.[1] And it has been held that as long as the physician-patient relationship continues, the statute will be tolled. Ashley v. United States, 413 F.2d 490 (9th Cir. 1969); Brown v. United States, 353 F.2d 578 (9th Cir. 1965). The rationale for this latter proposition is that the claimant is entitled to place trust and confidence in his physician and that this relationship excuses the claimant from challenging the quality of care he is receiving from his physician until this confidential relationship terminates. Brown v. United States, supra at 580.

The trial court found that appellant was aware of the deterioration in his health immediately following the methylene blue dye procedure. It also found that he had discussed the procedure and its after-effects with competent legal counsel at some point during the two years following July 16, 1963. These findings, coupled with the fact that appellant's medical history clearly demonstrates that he was not unskilled in matters of ill-health and their effects on his physical condition, substantiate the trial

1. Although the Supreme Court applied the "blameless ignorance" theory to the then-in-effect three year statute of limitations on claims brought under the Federal Employers' Liability Act, 45 U.S.C. § 51 et seq., this theory is applicable to the limitation of actions provision of the Federal Tort Claims Act.

court's rejection of appellant's contention that the statute of limitations should have been tolled because of his blameless ignorance.

█ In the alternative, appellant has suggested that by virtue of the continuous treatment he received at the V. A. Hospital during the period of time following July 16, 1963 and the nature of his confidential relationship with the government physicians, the statute of limitations was tolled. We disagree with these propositions.

On July 16, 1963, a certain staff neurologist at the V. A. Hospital injected appellant with methylene blue dye. On August 6, 1963, not only did the personal treatment of appellant by this individual physician cease but there was no allegedly negligent activity by any government physician after that date. Therefore, August 6, 1963 was the date on which appellant's continuous treatment terminated and his duty to diligently investigate the deleterious consequences of that treatment arose. His failure to pursue his remedy within two years of that date operates as bar to recovery.

In Ashley v. United States, supra at 493, the court stated that the continued existence of the physician-patient relationship tolls the statute of limitations "because it was thought that a private physician, knowing of his actionable mistake, might be able to conceal it from his patient or continuously to lull the patient into failing to institute suit within the ordinarily permissible time period." This concept is applicable to malpractice causes of action, but not to the instant case. For, "to apply such a rationale [concept] in this case would be unrealistically to imagine that a government physician in a Veterans hospital would be able to conspire successfully with all other government physicians and medical attendants who direct their attention to patients * * *." Ashley v. United States, supra at 493.

As we stated above, it is the continued existence of the physician-patient relationship which tolls the statute of limitations. Once this personal, confidential relationship terminates, the patient must exercise diligence in seeking a remedy for any suspected wrongdoing on the part of his physician. The trial court found that appellant had consulted with and confided in several government and private physicians after the events of July 16, 1963. It was therefore proper for the trial court to infer that appellant had knowingly and voluntarily terminated the physician-patient relationship and that the statute of limitations was not tolled.

█ The remaining issue before us may be dealt with briefly. Although we stated above that principles of federal law govern the statute of limitations provision of the Federal Tort Claims Act, it is the substantive law of the State wherein the cause of action accrues which governs the liability of the United States on claims brought under the Federal Tort Claims Act. The court below, in applying the substantive law of the Commonwealth of Pennsylvania, found that, notwithstanding the statutory bar created by the running of the statute of limitations, there was no negligence on the part of the United States. There is nothing in the record to persuade us that the trial court's findings were clearly erroneous. See Ciccarone v. United States, 350 F.Supp. 554 (E.D. Pa.1972).

For the reasons set forth herein, the judgment of the district court will be affirmed in its entirety.

ROSENN, Circuit Judge (concurring).

I have grave reservations that the findings of the district court with respect to the absence of malpractice in the intrathecal injection of methylene blue into the appellant's spinal column and the presence of an informed consent by him to the surgical procedure were not clearly erroneous. I would not reach these issues in the disposition of this case, however, since the appellant's action for damages is unfortunately barred by the two year statute of limita-

tions of the Federal Tort Claims Act. Like the majority, I am persuaded that before September 29, 1965, appellant discovered or reasonably should have discovered the acts constituting such alleged malpractice. Cf. Tyminski v. United States, 481 F.2d 257 (3d Cir., 1973). I therefore concur.