Richard W. NICOLAZZO and Pamela
Nicolazzo, Plaintiffs, Appellants,

v.

UNITED STATES of America,
Defendant, Appellee.

No. 85–1584.

United States Court of Appeals,
First Circuit.

Argued Nov. 14, 1985.

Decided March 21, 1986.

Paul F. Leavis, with whom Kirby & Leavis, Boston, Mass., was on brief, for plaintiffs, appellants.

Joan I. Milstein, Asst. U.S. Atty., with whom William F. Weld, U.S. Atty., Boston,

Mass., was on brief, for defendant, appellee.

Before COFFIN and BREYER, Circuit Judges, and WYZANSKI,* Senior District Judge.

COFFIN, Circuit Judge.

Plaintiffs-appellants, Richard and Pamela Nicolazzo, appeal from a summary judgment dismissing their claims for failure to comply with the statute of limitations. For reasons discussed below, we reverse.

I.

In 1969, while serving in the United States Army, Richard Nicolazzo was involved in a helicopter crash in which he sustained trauma to the left side of his head. Following the accident, Nicolazzo experienced, among other symptoms, severe head and ear pains. By the time of his discharge from the army in 1971, Nicolazzo's symptoms had developed into a constant ringing in his left ear, some left side hearing loss, occasional loss of balance, and chronic drainage and infections of the left ear.

Following his discharge from the army, Nicolazzo began receiving treatment for his ear problems at the Veterans Administration hospitals in Togus, Maine and Boston, Massachusetts. In 1971, a tube was inserted in Nicolazzo's left ear, and in February and May of 1972 Nicolazzo underwent audiometric exams for left ear hearing loss. In April 1972, Doctor Diehl at the Togus V.A. hospital diagnosed Nicolazzo's ear condition as fluid in the middle ear. The doctor did not take x-rays of the ear or prescribe antibiotics. In 1974, Nicolazzo underwent treatment for left ear drainage and again saw Dr. Diehl. In 1977, after another examination by Dr. Diehl, Nicolazzo's condition was diagnosed as an infection of the external ear canal, caused by irritation due to cleaning.

In 1977, Nicolazzo also visited a non-V.A. physician, Dr. McGill, for a hearing exam and audiogram. Dr. McGill concluded that

* Of the District of Massachusetts, sitting by designation.

Nicolazzo was suffering profound hearing loss in his left ear dating back to the accident in 1969, but indicated that he did not feel exploratory surgery was warranted. Dr. McGill gave no other suggestions for treatment.

During 1980, Nicolazzo saw Dr. Diehl five times, complaining of severe left ear pain, bleeding from the ear, dizziness, and some loss of balance. Although Dr. Diehl prescribed ampicillin after one visit, his basic advice was that he perceived no medication or surgery that could relieve Nicolazzo's symptoms.

In October 1980, Nicolazzo saw a new doctor, Dr. Bruce Trembly, for the first time. Trembly took a comprehensive history of Nicolazzo's symptoms, noting that one of Nicolazzo's complaints—numbness in the left side of the face—had become more prominent in the last year or so. Based on his examination, Trembly hypothesized that Nicolazzo's problems could be the result of a chronic infection at the site of a skull fracture incurred in the helicopter crash and from a cholesteatoma resulting from that infection. Trembly scheduled Nicolazzo for x-rays and other tests to test this diagnosis. The x-rays and tests confirmed the diagnosis, and Nicolazzo underwent surgical removal of the cholesteatoma and repair of the injury site. Following surgery and administration of antibiotics, Nicolazzo's ear condition improved significantly.

In December 1981, Nicolazzo filed a Federal Tort Claims Act (FTCA), claiming that his V.A. doctors had acted negligently in misdiagnosing and mistreating his injury.[1] Receiving no relief from the government under the administrative claim, Nicolazzo filed suit in federal court in October 1982. The government moved for summary judgment on the ground that the complaint was barred by the two year statute of limitations applicable to actions under the FTCA. The district court granted the government's motion, finding that *United States*

*v. Kubrick,* 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979), mandated that result. This appeal followed.

## II.

The statute of limitations applicable to the FTCA, 28 U.S.C. § 2401(b) provides that "[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal Agency within two years after such claim accrues". In a suit alleging medical malpractice, the claim accrues when a plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the existence and cause of his injury. *United States v. Kubrick,* 444 U.S. 111, 121-24, 100 S.Ct. 352, 359-60, 62 L.Ed.2d 259 (1979). The district court concluded that once Nicolazzo was aware that the treatment being administered to him by the V.A. doctors was not aiding him, he was put sufficiently on notice to begin the running of the statute of limitations as required by *Kubrick.* Thus, under this view, Nicolazzo's cause of action accrued as early as 1977, when Nicolazzo had voiced complaints about the treatment he was receiving at the V.A. facilities. We do not believe this is the proper perspective through which to view this case.

In *Kubrick,* the plaintiff knew that he had an infected femur and that six weeks after surgery for the infection, he had ear ringing and hearing loss. *Kubrick,* 444 U.S. at 113-14, 100 S.Ct. at 354-55. Eight months after surgery, a specialist obtained hospital records (which any consultant could do), noticed that Kubrick had been administered neomycin following surgery, and told Kubrick that it was "highly possible" the hearing loss was caused by the neomycin. *Id.* at 114, 100 S.Ct. at 355. The Supreme Court thus noted that several months after surgery, Kubrick was aware of both his injury and its probable cause. According to the Court, once a plaintiff is then "in possession of the critical facts that

---

1. Pamela Nicolazzo also filed a claim, charging loss of consortium resulting from the negligence of Nicolazzo's doctors. We consider only Richard Nicolazzo's cause of action, for his wife's claim survives or falls on the same reasoning.

he has been injured and who has inflicted the injury", 444 U.S. at 122, 100 S.Ct. at 359, it is up to the plaintiff to diligently find out, within the statute of limitations period, whether the conduct was negligent. For, noted the Court, "[the plaintiff] is no longer at the mercy of [the defendant]. There are others who can tell him if he has been wronged, and he need only ask." 444 U.S. at 122, 100 S.Ct. at 359. Whom Kubrick should have asked was soon answered by the Court: "Crediting this finding [that reasonably competent doctors would have known Kubrick should not have been treated with neomycin] ..., Kubrick need only have made inquiry among doctors with average training and experience to have discovered ... a good cause of action." 444 U.S. at 123, 100 S.Ct. at 360.

In *Kubrick*, the Court specifically mentioned two cases that did not address the same situation faced by Kubrick. The first case was *Urie v. Thompson*, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949). In that case, the Supreme Court had held that a claim arising from silicosis did not accrue until the illness manifested itself by disabling the claimant, the illness being unknown and unknowable before then. The second case, closer to our facts, was *Quinton v. United States*, 304 F.2d 234 (5th Cir.1962). In that case, doctors had given the plaintiff three transfusions in 1956, erroneously giving her RH positive blood rather than RH negative. Only when the plaintiff had a stillborn child in 1959 was the error discovered, or in the exercise of reasonable care, discoverable. Borrowing language from *Urie*, the court stated that to say the cause of action arose in 1956 would make it "clear that the federal legislation afforded ... only a delusive remedy". *Quinton*, 304 F.2d at 241.

The essential point in both *Urie* and *Quinton*, emphasized by the Supreme Court in *Kubrick*, was that when a plaintiff's "blameless ignorance" resulted in his or her inability to be aware of the *basis* for the cause of action, the statute of limitations did not begin to run until the "factual predicate for a malpractice claim" became apparent. *Kubrick*, 444 U.S. at 121, n. 8,

100 S.Ct. at 359, n. 8. *See also Arvayo by and through Arvayo v. United States*, 580 F.Supp. 753, 762 (D.Kansas 1984) (noting that the "blameless ignorance" doctrine remains in force following *Kubrick*).

In Nicolazzo's case, the factual predicate for his medical malpractice claim could not have become apparent to him before receiving a correct diagnosis in 1980. The initial cause of the problem was apparently the helicopter crash, occurring in 1969, and resulting in various symptoms. Over time, some symptoms lessened and others developed. Between 1972 and the end of 1980, Nicolazzo saw his V.A. doctor on some ten occasions, with various resulting diagnoses. Only in October 1980 did Dr. Trembly tentatively diagnose the cause of Nicolazzo's ear problems as stemming from a tumor or cholesteatoma resulting from an ongoing chronic infection at the petrous ridge site of a skull fracture.

While the injury in this case, therefore, is hearing loss, which of course was both known and knowable prior to 1980, the cause was the three-faceted one of a chronic infection at the site of a skull fracture which created the cholesteatoma. Nicolazzo's cause of action for medical malpractice is not based on discovery of the injury but on the assertion that competent doctors would have done the extensive tests and x-rays that would have discovered the relatively elusive cause of that injury. This cause of action is a far cry from the known injection of neomycin in *Kubrick*—primarily because it was *not* one that Nicolazzo could have easily discovered by simply "[making] inquiry among doctors with average training." 444 U.S. at 123, 100 S.Ct. at 360. In fact, Nicolazzo did go to a private doctor in 1977 and had no better luck with a diagnosis. It was only when Nicolazzo received a correct diagnosis in 1980 that the factual predicate of his injury—the infection cum fracture cum tumor—became known to him.

In order to prevail on the merits of his claim, Nicolazzo will of course have to prove that the only reason he received a

correct diagnosis in 1980 was because he finally saw a competent doctor. If Nicolazzo cannot prove that his V.A. doctors fell below the required standard of care, his medical malpractice claim will fail. The issue, however, of whether Nicolazzo can prove his case on the merits is entirely separate from the question of when Nicolazzo should be charged with knowledge of his cause of action such as to trigger running of the statute of limitations. That point, we conclude, is only when Nicolazzo received his correct diagnosis; it is only at that point that we can legitimately say Nicolazzo was "in possession of the critical facts that he has been injured and who has inflicted the injury" as required by *Kubrick*. *Kubrick*, 444 U.S. at 122, 100 S.Ct. at 359. *See also Augustine v. United States*, 704 F.2d 1074, 1078 (9th Cir.1983) (distinguishing between cases of affirmative mistreatment and misdiagnosis for purposes of statute of limitations).

Once Nicolazzo knew of his injury and its cause in 1980, *Kubrick* placed upon him the responsibilty of making inquiries among the medical and legal profession in order to ascertain whether the acts or omissions of his doctors had constituted negligence. Nicolazzo indeed made such inquiries and filed his FTCA claim within two years of receiving the correct diagnosis. We conclude that Nicolazzo's action was therefore brought within the appropriate statute of limitations.

The district court's grant of summary judgment for the government is *reversed*.