Fernando SANTANA, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. No. 87–011 HL.

United States District Court, D. Puerto Rico.

April 7, 1988.

Carlos Berreteaga, José M. Lorie Velasco, Law Offices of Adrian Mercado, Old San Juan, P.R., Alfredo Carlo Toro, San Juan, P.R., for plaintiff.

Fidel Sevillano, Asst. U.S. Atty., for defendant.

## OPINION AND ORDER

LAFFITTE, District Judge.

This is an action for medical malpractice against the United States under the Federal Tort Claims Act, 28 U.S.C. sect. 1346(b) and 2675(a) *et seq.* Before the Court is defendant's motion for summary judgment on the ground that this action is time barred. Plaintiff has opposed said motion. We deny defendant's motion for summary judgment.

In reviewing plaintiff's deposition, exhibits of plaintiff's medical records at the Veterans Administration (VA) hospital, affidavits and pleadings, these principal facts are developed:

On March 25, 1982, plaintiff went to the VA hospital in San Juan, Puerto Rico, complaining of a long time problem of foot fungus. Dr. Néstor C. Tirado, the examining physician, made an assessment of tinea pedis and onychomycosis and prescribed 500 mg of Fulvicin daily and Lotrimin ointment and discharged the patient home with instructions.

On August 23, 1982, plaintiff returned to Dr. Tirado at the VA hospital complaining of hypersensitivity to Grisiofulvin (Fulvicin) and abdominal pain. Dr. Tirado made the following assessment: abdominal pain, r/o musculoskeletal pain and phototoxic skin reaction. Dr. Tirado circled and starred his assessment of phototoxic skin reaction. He ordered laboratory test and X-rays of plaintiff's abdomen and a follow up visit to the acute clinic in one month.

On September 10, 1982, another physician, Dr. Sylvia A. Fuertes, examined plain-

tiff. She suspected phototoxic skin reaction by Lotrimin and Fulvicin for tinea pedis and onychomycosis superimposed on vitiligo. In her consultation report, she noted that plaintiff stated that all this skin process began after taking Fulvicin for tinea pedis and he had no history of chemical exposure. She observed that patient had "vitiligeous areas in both upper and lower extremities—face and periscalp, torso, cracks between toes." (Plaintiff's Exhibit III.)

Plaintiff returned to VA hospital on September 28, 1982 and was examined by a dermatologist, Dr. Reynaldo Rosario. He noted that this is probably a case of extensive vitiligo—although not all areas are completely devoid of pigment. Plaintiff continued to visit Dr. Rosario at the VA hospital for treatment in 1982 and 1983. On October 5, 1983, Dr. Rosario began to consider the possibility of complete depigmentation. Plaintiff made regular visits to the VA hospital until March 15, 1985, when a medical doctor of the VA hospital informed plaintiff that his condition was permanent and that only God could help him. At this visit, plaintiff complained of abdominal pains. He was given an appointment to the surgery clinic for March 22, 1985 but he never returned to the VA hospital.

While plaintiff was undergoing treatment, plaintiff filed two claims for disability benefits at the VA, on August 25, 1982 and on August 20, 1984, as a result of his skin disease. The VA denied both claims because he was found not to be permanently disabled. The rating specialists noted in their second decision that plaintiff stated the "the skin process began after taking

Fulvicin for tinea pace" (sic). (Plaintiff's Exhibit XV.)

Plaintiff mailed his administrative claim for medical malpractice to the VA on January 9, 1986. The claim was denied on July 8, 1986.[1] On January 7, 1987, plaintiff commenced this action for medical malpractice. Plaintiff alleges that defendant's employee was negligent in failing to test plaintiff for allergic reaction to Griseofulvin before prescribing said medication and was negligent in failing to warn plaintiff of the possible consequences of taking Griseofulvin.

The government argues in the motion for summary judgment that plaintiff's action is barred by the time limitation provision set forth in 28 U.S.C. sect. 2401. The moving party in a summary judgment motion must clearly demonstrate the absence of any material facts and is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court must examine the record "in the light most favorable to the party opposing the motion." *Poller v. Columbia Broadcasting System,* 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962).

It is axiomatic that the United States is immune from suit unless there is an express waiver. *United States v. Kubrick,* 444 U.S. 111, 117–18, 100 S.Ct. 352, 357, 62 L.Ed.2d 259 (1979); *Soriano v. United States,* 352 U.S. 270, 276, 77 S.Ct. 269, 273, 1 L.Ed.2d 306 (1957). The Federal Tort Claims Act ("Act"), 28 U.S.C. sections 1346(b), 2671 *et seq.* is a limited waiver of the United States' sovereign immunity. *United States v. Sherwood,* 312 U.S. 584,

---

1. According to the affidavit of Osvaldo A. Izquierdo Capella, attorney for the VA, he states that the initial administrative complaint was received at the San Juan District Counsel's Office on January 13, 1986. Form SF–95, however, was not filed with claim. A letter acknowledging receipt of the complaint and informing plaintiff to fill out the enclosed SF–95 was sent to claimant's attorney on January 15, 1986. On June 11, 1986, another letter was sent to plaintiff's attorney that VA had not received the SF–95 and the other requested documents. The affidavit also states that on July 8, 1986 the VA restated their previous requests to claimant's attorney. On July 14, 1986, the District Coun-

sel's Office received the requested information but no SF–95. It is at this latter date that the administrative claim is considered perfected.

In contrast to these statements, plaintiff submits a letter dated July 8, 1986 from the VA to plaintiff's attorney. This letter informed plaintiff that his administrative claim was denied because their investigation failed to reveal the existence of any negligence or wrongful act or omission on the part of the VA personnel at the hospital in San Juan. The letter also advised plaintiff of his right to appeal. Thus, we find that the administrative appeal was perfected on January 13, 1986.

61 S.Ct. 767, 85 L.Ed. 1058 (1940). Although the Act creates a right of recovery against the United States, this right is limited by a prescriptive period. Specifically, Section 2401 of the Act provides in pertinent part:

A tort claim against the United States shall be forever barred unless presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months ... of notice of final denial of the claim by the agency to which it was presented.

28 U.S.C. sect. 2401(b) (Supp.1987).

■■■ Under the Act, a claim for medical malpractice accrues when a plaintiff discovers or in the exercise of reasonable diligence, should have discovered the existence, permanence and physical cause of the injury, whether or not he has reason to believe that he has an actionable claim. *United States v. Kubrick*, 444 U.S. 111, 121–24, 100 S.Ct. 352, 359–60, 62 L.Ed.2d 259 (1979); *Nicolazzo v. United States*, 786 F.2d 454 (1st Cir.1986).[2] Once a plaintiff knows of his injury and its cause, plaintiff has the responsibility of seeking advice among the medical and legal profession to determine whether or not the acts or omissions of his physician were negligent. *Kubrick*, 444 U.S. at 123, 100 S.Ct. at 360. Yet, "when a plaintiff's 'blameless ignorance' resulted his inability to be aware of the basis for the cause of action, the statute of limitations did not begin to run until the 'factual predicate for a malpractice claim' became apparent." *Nicolazzo*, 786 F.2d at 456 (citing *Kubrick*, 444 U.S. at 121, n. 8, 100 S.Ct. at 359, n. 8). The issue in this case is whether or not plaintiff is "armed with facts about the harm done to him" to place him on notice, actual or constructive, that he should inquire into the

possibility of medical malpractice. *Dundon v. United States*, 559 F.Supp. 469, 472 (E.D.N.Y.1983) (citing *Kubrick*, 444 U.S. at 124, 100 S.Ct. at 360); *Exnicious v. United States*, 563 F.2d 418, 421 (10th Cir.1977); *Drazan v. United States*, 762 F.2d 56 (7th Cir.1985) (notice of physician's harm not necessarily negligent harm).

The government asserts that plaintiff was armed with the facts of the harm done to him either in 1982 or 1983. The government sets forth three different days. In the motion, the government argues that plaintiff knew of his condition on March 25, 1982, the day Dr. Tirado prescribed Fulvicin to treat plaintiff's foot fungus or on September 28, 1982, the day Dr. Rosario preliminarily diagnosed vitiligo as the cause of plaintiff's skin disorder. In the affidavit submitted to support defendant's motion, Osvaldo A. Izquierdo Capella, attorney for the VA, states that in reviewing plaintiff's medical records plaintiff knew his condition was permanent by October 15, 1983, when complete depigmentation for his condition (vitiligo) was considered. On the other hand, plaintiff contends that his cause of action did not accrue until March 15, 1985, at the earliest, when he was last seen by the VA hospital for his condition and was told by the physician that only God can help him. Plaintiff then realized that the injury he had experienced in 1982 was probably caused by the negligence of the VA hospital. He began his investigation by seeking legal counsel.

■■■ We cannot positively state that plaintiff actually discovered both the injury and its cause in 1982 or 1983. "It must appear conclusively from the record that the claimant knew ... of the alleged malpractice at a time beyond the limitation bar for summary judgment to be granted."

---

**2.** Plaintiff argues that Puerto Rico law determines accrual of the statute of limitations under the Act based on *Hau v. United States*, 575 F.2d 1000, 1002 (1st Cir.1978) and *Kirk v. United States*, 604 F.Supp. 1474 (D.N.H.1985) (not a medical malpractice case). Plaintiff is mistaken. In a very recent First Circuit case, the circuit court applied federal law enunciated by the Supreme Court case of *Kubrick*, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259, to determine accrual in medical malpractice actions under the Act. *Nicolazzo*, 786 F.2d 454. *See also Galarza v. Zagury*, 739 F.2d 20 (1st Cir.1984). Nevertheless, the standards are the same under federal law and the Puerto Rico law. *Cf.* 31 L.P.R.A. sect. 5298; *Colón Prieto v. Géigel*, 115 D.P.R. 132, 244 (1984) (a cause of action accrues when the injured party knows that he has been injured).

*Exnicious,* 563 F.2d at 424. Although the medical doctors at the VA hospital knew that plaintiff had vitiligo and suspected phototoxic skin reaction by Fulvicin, it is not clear to what extent the hospital records were available to plaintiff and whether plaintiff was informed of the doctors' diagnosis. *Sanders v. United States,* 551 F.2d 458 (D.C.Cir.1977); *Camire v. United States,* 535 F.2d 749 (2nd Cir.1976). Although Dr. Rosario suspected vitiligo as early as September 28, 1982, and later determined in October of 1983 that plaintiff's condition was permanent, it is not clear from the medical or the legal records that plaintiff was aware of said diagnosis. In addition, we certainly cannot agree with defendant's assertion that plaintiff was aware of the alleged harm on the day he was treated with the alleged cause Fulvicin. From plaintiff's deposition, the skin reaction began to appear approximately two or three weeks after taking the medication. Plaintiff first experienced itching, stomach cramps, and vomiting before depigmentation commenced.

We turn to the more difficult question of whether or not in plaintiff's factual situation, he should have exercised reasonable diligence to discover the possibility of medical malpractice. Plaintiff knew of his alleged injury in 1982 because vitiligeous areas were visible. There are indications in the record that plaintiff was aware that his skin condition developed after taking Fulvicin but not necessarily that it was the cause of his alleged injuries. For example, on September 10, 1982, and later on August 20, 1984, he informed Dr. Fuertes and the VA respectively that his skin condition began after taking said pills. Prior to these dates, in August 1982, when he had returned to the VA hospital to complain about his reaction to the medication, he had heard Dr. Tirado asked another doctor whether it was possible that plaintiff could have suffered stomach pains and vomiting as result of the medication and the other doctor answered possibly. No mention, however, was made concerning depigmentation. *Accord, Galarza v. Zagury,* 739 F.2d 20 (1st Cir.1984) (knowledge of the damage may not be attributable from a

medical operation). Plaintiff believed that his condition was related to his military service. This supposedly lead him to file two claims for disability at the VA. His claims were denied because there was no evidence in the service medical records to establish a service connection regarding his skin, feet and stomach conditions. The deposition of plaintiff is not helpful in determining whether he had suspected any possible harm done to him by Dr. Tirado before March 15, 1985. Plaintiff asserts he was blamelessly ignorant of the circumstances.

Both parties disagree as to when plaintiff should have exercised reasonable diligence to investigate the cause of his skin condition. Every favorable inference must be accorded to plaintiff. In our view, a genuine issue of material fact exists as to when a reasonable person in plaintiff's position should have suspected that he was allegedly harmed by Dr. Tirado. Hence, the issue of when the accrual period began the running of the time limitation provision can only be answered after a full disposition of merits. *Dundon,* 559 F.Supp. at 472.

■ Even assuming that the date of accrual commenced as early as March 25, 1982, the day plaintiff was prescribed Fulvicin, the time limitation provision was tolled until the last day of treatment, March 25, 1985. Accordingly, plaintiff would have until March 25, 1987 to submit in writing his claim to the appropriate federal agency. The tolling doctrine of "continuous treatment" may be relevant. This doctrine was first established in *Borgia v. City of New York,* 12 N.Y.2d 151, 237 N.Y.S.2d 319, 187 N.E.2d 777 (1962), which held that when there has been a course of continuous medical treatment, a cause of action for malpractice accrues at the end of the continuous treatment if the treatment has been the same illness or injury out of which the claim for malpractice arose. *Id.,* 237 N.Y.S.2d at 319, 187 N.E.2d at 777. Cases have held that the doctrine is applicable to medical malpractice action under the Act. *Kossick v. United States,* 330 F.2d 933 (2d Cir.1964), *cert. denied,* 379 U.S.

837, 85 S.Ct. 73, 13 L.Ed.2d 44 (1964). *See Tyminski v. United States,* 481 F.2d 257, 264, n. 5 (3rd Cir.1973) (the rationale for the continuous treatment doctrine does have value in determining reasonable diligence to discover the acts constituting negligence). *Cf., Reilly v. United States,* 513 F.2d 147, 150 (8th Cir.1975); *Ashley v. United States,* 413 F.2d 490, 493 (9th Cir. 1969) (continuous treatment doctrine does not apply where plaintiff knows of the acts constituting negligence). The rationale behind the doctrine is that "it would be absurd to require a wronged patient to interrupt corrective efforts by serving a summons on the physician or hospital superintendent." *Kossick,* 330 F.2d at 936 (citing *Borgia,* 12 N.Y.2d 151, 156, 237 N.Y.S.2d 319, 321–22, 187 N.E.2d 777 at 779). The doctrine applies to cases in which a patient is treated by the same physician that caused the harm or by his associates at the same hospital. *Camire,* 535 F.2d at 750. *Cf., Brown v. United States,* 353 F.2d 578, 580 (9th Cir.1965) ("treatment from succeeding government physicians" does not toll the statute of limitation when the personal relationship with physician charged with malpractice has ended and that physician is not directed concert with the succeeding physician). Under this theory, the statute of limitation is tolled until the termination of the physician-patient relationship. *Dundon,* 559 F.Supp. at 473, *Ciccarone v. United States,* 486 F.2d 253, 257 (3d Cir.1973). The purpose for the rule is to protect the confidential doctor-patient relationship. *Brown* 353 F.2d at 580.

Clearly, plaintiff underwent continuous and regular treatment at the VA hospital in San Juan by the associates of Dr. Tirado, the alleged negligent doctor, for two years and seven months. Thus, it would be unfair to impose on the aggrieved plaintiff to stop the corrective efforts of the VA hospital. *Kossick* at 936. Continuous treatment doctrine is still applicable in this case even though plaintiff received continuous treatment from the associates of Dr. Tirado. It is not likely that these physicians would have advised plaintiff that their associate committed a negligent act, if any. Therefore, the two year time limitation was tolled until March 15, 1985, the last day of treatment, and plaintiff's cause of action was timely submitted on January 13, 1986.

WHEREFORE, defendant's motion for summary judgment is DENIED.

IT IS SO ORDERED.