**William G. TOLLIVER and Sandra Tolliver, individually and as parent, guardian and next friend of James Wilbert Tolliver, Richard Thomas Tolliver and Kelly Lee Tolliver, infants, Plaintiffs,**

v.

**UNITED STATES of America, B. Lucktong, M.D., and Cirilo Z. Villanueva, M.D., Defendants.**

Civ. A. No. 1:92–0453.

United States District Court,
S.D. West Virginia,
at Bluefield.

Sept. 21, 1993.

David C. Smith, Johnston, Holroyd & Assocs.; Princeton, WV, and David L. White, Sanders, Watson & White, Bluefield, WV, for plaintiffs.

Stephen M. Horn, Asst. U.S. Atty., Charleston, WV, for defendants.

## OPINION

FABER, District Judge.

This medical malpractice action was filed against the United States under the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346, 2671 et seq., on May 18, 1992. The plaintiffs allege that William G. Tolliver sustained severe and permanent injuries due to negligent administration of anesthesia during surgery at the Veterans Administration Medical Center in Beckley, West Virginia (hereinafter Beckley VA Hospital), on January 18, 1989.[1] On May 20, 1991, prior to filing this suit, the plaintiff filed administrative claims as required by the Act which were denied on or about November 20, 1991. The claim alleged that the treating surgeon, hospital staff and attending anesthetists violated the standard of care in administering anesthetic during surgery and that the nature and cause of his injury was concealed from him during his continuous course of treatment by physicians and others at the Beckley VA Hospital.

The United States has filed a motion to dismiss this action or, in the alternative, for summary judgment, charging that the plaintiff failed to file a timely administrative claim within two years as required by the Act. Pursuant to Fed.R.Civ.P., Rule 12(b), since matters outside the pleadings have been presented to the court and not excluded, defendant's motion will be treated as a motion for summary judgment and disposed of as provided in Fed.R.Civ.P., Rule 56.

The material facts pertinent to the pending motion are not in dispute. Plaintiff, William G. Tolliver, a thirty-seven-year-old father of three children, underwent elective gall bladder surgery at the Beckley VA Hospital on January 18, 1989. Following surgery, Mr. Tolliver was somewhat lethargic during the days he spent in the hospital recovering, but his wife was repeatedly assured by hospital personnel that he would recover and that his symptoms were merely attributable to the medication being administered to him. The symptoms persisted, however, consisting of memory loss, mental lethargy and decreased mental acuity, as well as extreme anxiety. When his condition did not improve, Tolliver was referred by Dr. Lucktong, the surgeon who had performed the operation, to his colleague at the Beckley VA Hospital, psychiatrist Ralph Fredman, who initially saw Tolliver on February 13, 1989, approximately one month after the surgery. Dr. Fredman diagnosed Tolliver as suffering from, among other things, organic brain syndrome due to anesthesia. Sandra Jane Tolliver, Tolliver's wife, testified that Dr. Fredman told her her husband's problems were due to the anesthesia and that he wrote that in his report. Mrs. Tolliver's recollection corresponds with Dr. Fredman's medical records of February 13, 1989, where he lists as his diagnosis "organic brain syndrome" and in a handwritten note appended thereto "due to anesthesia." Dr. Fredman also noted in the progress notes he made on the same date that Mr. Tolliver's condition was "apparently due to the general anesthesia that was used." Thereafter, however, after consultation with Dr. Villanueva, the anesthesiologist, Dr. Fredman changed his diagnosis to anxiety disorder and assured Mrs. Tolliver that her husband's condition would improve over time. Mr. Tolliver remained under Dr. Fredman's care until approximately February 18, 1990.

Eventually, when Mr. Tolliver still showed no improvement, Mrs. Tolliver took him in October or November of 1989 to the Southern Highlands Community Mental Health Center (hereinafter "Southern Highlands"), in Princeton, West Virginia, to obtain a second opinion. There, he was seen by psychiatric personnel who informed Mrs. Tolliver that his condition would not get any better and that she should consult legal counsel. Mrs. Tolliver asserted that until she was

---

1. In addition to naming the United States as a defendant, the plaintiffs originally sued the surgeon, Dr. Lucktong, and the anesthesiologist, Dr. Villanueva; both were, upon certification by the United States pursuant to 28 U.S.C. § 2679, dismissed as parties.

advised in October or November of 1989 by psychiatric personnel at Southern Highlands that Mr. Tolliver's condition would never improve, she relied upon Dr. Fredman's opinion, "stated during the course of continuous treatment at the VA Hospital. in Beckley, West Virginia, that her husband's condition would improve over a period of six to eight months." The complaint alleges that "false and misleading representations" were made that Mr. Tolliver's condition was a temporary result of the effects of the anesthesia, but Dr. Fredman was not named as a defendant in the original Complaint.

The United States contends that the two-year period for filing a claim under 28 U.S.C. § 2401 began to run on February 13, 1989, when Dr. Fredman originally diagnosed Mr. Tolliver's condition as organic brain syndrome due to anesthesia and communicated this diagnosis to Mrs. Tolliver, and that plaintiffs' original claim filed on May 20, 1991, was untimely and bars this action. Plaintiffs, on the other hand, maintain that the continuous treatment rule tolls the limitations period and renders this action timely.

■ ▇ A claim under the Federal Tort Claims Act exists against the government only if the plaintiff would also have a claim under state law against a private person in like circumstances. While state law, here the law of West Virginia, determines whether a cause of action exists, federal law defines the limitations period and determines when the cause of action accrued. *Miller v. United States*, 932 F.2d 301 (4th Cir.1991). In *United States v. Kubrick*, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979), the Supreme Court held that a medical malpractice claim accrues under the Act when the claimant first knows of the injury and its cause.

▇ The *Kubrick* rule, if literally applied to this case, would start the two-year limitations period to run in February 1989, when Dr. Fredman first diagnosed Tolliver as suffering from organic brain syndrome due to anesthesia administered during his gall bladder surgery. At this point the plaintiffs were informed of the nature of Tolliver's injury and its cause. An escape hatch from rigorous application of the *Kubrick* rule is provided, however, by the "continuous treatment"

theory. This theory was adopted in the Fourth Circuit in *Miller v. United States*, 932 F.2d 301 (4th Cir.1991), and *Otto v. National Institute of Health*, 815 F.2d 985 (4th Cir.1987), and is widely followed throughout the federal system. As Judge Phillips observed in *Miller*, the continuous treatment rule "effectively trumps a rigid application of *Kubrick's* first discovery rule." *Id.* at 304.

The sole issue before the court upon defendant's motion for summary judgment is whether the continuous treatment rule saves this action from dismissal under the statute of limitations.

The theory which underlies the continuous treatment rule is simple and logical, but its application to a specific fact pattern may be difficult. For the reason behind the rule, we again turn to Judge Phillips and the *Miller* case:

> Our reason, and that of other courts applying the theory, is that a rigid application of the *Kubrick* rule can effectively deprive a medical patient of her "right to place trust and confidence in [her] physician;" and the solution is to excuse the patient "from challenging the quality of care being rendered until the confidential relationship terminates," *i.e.*, to toll the statute's running during this period.

*Id.* at 304.

▇ Difficulty in applying the rule arises when a patient has been treated by more than one doctor. Under some circumstances, multiple physicians are treated as linked for purposes of the rule; in others, a change of physician breaks the chain and allows the limitations period to run. Examination of the cases does not disclose a bright-line rule showing clearly when multiple physicians are to be considered as providing continuous treatment under the rule. The cases discussed herein do make clear that a close nexus is required for a change of doctors not to break the chain. The court concludes that such a nexus is present in this case and that the continuous treatment rule operates to save the Tollivers' action from dismissal under the statute of limitations.

The entire course of Tolliver's treatment for his mental problems up until October or November 1989, when he finally sought an outside opinion, occurred at the Beckley VA Hospital in Beckley, West Virginia.[2] The treating physician during most of this time was Dr. Fredman, an associate at the Beckley VA Hospital of Dr. Lucktong, the surgeon, and Dr. Villanueva, the anesthesiologist. Dr. Lucktong originally treated Tolliver for his post-operative mental problems and then specifically referred him to Dr. Fredman. Dr. Fredman initially diagnosed Tolliver's condition as organic brain syndrome due to anesthesiology, but then changed his opinion after consulting with Dr. Villanueva. Dr. Fredman then assured Tolliver he would get better over time.

In *Otto v. National Institute of Health,* 815 F.2d at 989, the United States Court of Appeals for the Fourth Circuit held that plaintiff's action was saved under the continuous treatment doctrine even though the treating physicians at the National Institute had referred the plaintiff to doctors outside that facility for further treatment. Continuing consultation among the National Institute doctors and the outside physicians was considered to be a sufficient connection for the rule to apply. *Miller v. United States,* 932 F.2d at 305, stands on the other side of the scale. There, the plaintiff was treated at two different military hospitals for the same condition, but there had been no referral or other connection between the doctors at the two facilities. Under such circumstances, the continuous treatment rule was held not to apply. The present case is much more akin to *Otto* than to *Miller.*

The impact of continued assurances that the patient's condition will improve over time is also significant. In *Wehrman v. United States,* 830 F.2d 1480 (8th Cir.1987), the court held that under the continuing treatment doctrine a patient's cause of action does not accrue until the tortious continuing treatment ends even if the patient is aware of facts constituting negligence before that time. The court found that Wehrman's

treatment by numerous Veterans Administration doctors over a twenty-two-year period did not preclude application of the continuing treatment rule, particularly in light of repeated advice that surgery which ultimately corrected his problem was not a viable option. *See also, McDonald v. United States,* 843 F.2d 247 (6th Cir.1988).

In *Santana v. United States,* 693 F.Supp. 1309 (D.P.R.1988), continuing treatment by associates of the allegedly negligent doctor was held sufficient to toll the statute of limitations, the court observing that: "It is not likely that these physicians would have advised plaintiff that their associate committed a negligent act, if any." *Id.* at 1314. In the present case, not only did Dr. Fredman not advise Tolliver of the possibility of negligence by his associates, he changed his diagnosis and assured Tolliver he would improve, thereby giving the plaintiffs a false sense of security in the belief that Tolliver's problems were transient and not due to administration of the anesthesia as Dr. Fredman had originally opined.

Finally, Tolliver's administrative claim filed with the government indicates that his Complaint is focused upon the entire course of his treatment at the Beckley VA Hospital and not limited to his surgery. Not only does he contend that the surgeon, hospital staff and attending anesthetist violated the standard of care with regard to use of the anesthetic during surgery, his claim asserts that "the nature and cause of his injury was concealed from him during his continuous course of treatment by physicians and others at the Beckley VA hospital." Similarly, in *Wehrman v. United States,* 830 F.2d at 1485, the continuous treatment doctrine was held to apply where the plaintiff directed his complaint to the plan of treatment at the Veterans Administration hospital in question in which all of his doctors had participated. *See also, Ulrich v. Veterans Administration Hospital,* 853 F.2d 1078 (2d Cir.1988).

Cases such as *Hulver v. United States,* 562 F.2d 1132 (8th Cir.1977), and *Ciccarone v. United States,* 486 F.2d 253 (3d Cir.1973),

---

**2.** It is interesting to note that Tolliver's claim for Social Security benefits was filed on October 23, 1989, at about the time he sought a second opinion on his condition from Southern Highlands.

holding that treatment by succeeding doctors at the same Veterans Administration hospital was insufficient for the continuing treatment rule to apply are distinguishable on the ground that, in those cases, no assurances were made to the claimants by subsequent treating physicians that their conditions would improve over time or that they would recover completely. When such assurances are made, it seems reasonable for plaintiffs to rely on them and delay bringing suit. Nor is the court driven to a different conclusion by *Chapman v. United States,* No. 88–3100, 1989 WL 7010 (4th Circuit, January 30, 1989), an unpublished opinion upon which the defendant relies. In that case the plaintiff obtained his entire Veterans Administration file in 1982 indicating he planned to sue the Veterans Administration for negligence. He waited until 1985 to file a claim under the Federal Tort Claims Act and did not bring suit until 1987. Under such circumstances, the court held, the statute of limitations had run, even though at some unspecified point in the process, Veterans Administration doctors had said there was nothing wrong with the plaintiff. This is quite a different situation from the present case in which Dr. Fredman, to whom Tolliver was specifically referred by the treating surgeon within a month of the surgery, made an original diagnosis which was consistent with Tolliver's negligence theory, but then changed it after consultation with the anesthesiologist and thereafter assured Tolliver he would get better over time.

For all of these reasons the court concludes that there was a sufficient connection among the various treating physicians at the Beckley VA Hospital for the continuous treatment doctrine to apply and toll the statute of limitations until October 1989 when Tolliver sought an outside opinion from doctors at Southern Highlands. Accordingly, this action is not barred by the statute of limitations and defendant's motion for summary judgment is **DENIED.**