Christopher MONDAY, P.P.A., et al., Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. No. 87–0146–P.

United States District Court, D. Maine.

July 22, 1988.

Philip J. Crowe, Jr., Lubin & Meyer, P.C., Boston, Mass., Douglas Kaplan, Bornstein & Hovermale, Portland, Me., for plaintiffs.

David R. Collins, Nicholas M. Gess, Asst. U.S. Atty., Portland, Me., for defendant.

## MEMORANDUM OF DECISION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

GENE CARTER, District Judge.

### I. Introduction

Plaintiff Christopher Monday, a minor, brings this action through his parents, Pamela and Herman Monday, to recover damages for injuries he allegedly suffered during his birth at a United States Naval Hospital. Pamela and Herman Monday seek to recover, in their own right, for medical expenses, emotional distress and loss of their son's society.

Defendant has moved to dismiss the action for lack of jurisdiction, claiming Plaintiffs failed to bring the action within the two-year statute of limitations set out in the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2401(b), and the regulations enacted pursuant to it. Defendant claims that if Plaintiffs' action is allowed, their damage request must be reduced to the damage request in their administrative claim, pursuant to 28 U.S.C.A. § 2675(b).

For reasons set forth in this opinion, the Court denies Defendant's motion, but reduces the amount of Plaintiffs' damage claim from $44 million to $10 million, pursuant to 28 U.S.C.A. § 2675(b).

### II. Factual and Procedural Background

Pamela Monday was admitted to the Charleston Naval Hospital, Charleston,

South Carolina, on May 25, 1984, two weeks past her scheduled delivery date. During induced labor, she suffered a grand mal seizure and temporarily stopped breathing. Physicians delivered a son, Christopher, by emergency Caesarean section. At birth he was suffering from severe respiratory distress, and had inhaled meconium (fetal feces).

Doctors inserted a breathing tube and transferred Christopher to the Medical University of South Carolina hospital, where he was treated for persistent lack of oxygen and complications from meconium inhalation. He developed, and was treated for, seizures. One week later, he was returned to Charleston Naval Hospital, from which he was discharged on June 7, 1984.

During a well-baby exam on January 16, 1985, physicians recommended that Christopher undergo a thorough neurological examination. After the neurological exam on March 14, 1985, doctors diagnosed Christopher as having cerebral palsy, and suggested that it may have been caused at birth.

On May 23, 1986, the Mondays' attorney, Phillip Crowe, submitted to the Department of the Navy an administrative claim for Christopher's injuries, and for Pamela and Herman Monday's medical expenses, emotional distress and loss of Christopher's society. Mr. Crowe signed in his capacity as the Mondays' attorney, but did not include evidence of his authority to file a claim on their behalf, which is required by statute.[1] Navy administrators returned the claim with a letter pointing out its technical deficiencies.

On August 4, 1986, Mr. Crowe submitted a second claim signed by Herman Monday. It, too, was returned with a letter explaining that the claim had to be signed by both parents, and had to include evidence of the representative capacity in which they signed for Christopher.

On November 6, 1986, Mr. Crowe submitted a third claim signed by Pamela Monday, Herman Monday, and Herman Monday as Christopher's father. Defendant acknowledges that this third filing gave effective notice of Plaintiffs' claims.

Plaintiffs filed this instant action on May 18, 1987, alleging negligent medical treatment, breach of express or implied warranty, failure to disclose risks and alternatives prior to medical treatment, negligent infliction of emotional distress, and loss of society.

Defendant has moved to dismiss, claiming that the two-year statute of limitations under the FTCA began running when Christopher was born, not when doctors diagnosed his cerebral palsy and suggested a line between the disease and his traumatic birth. They argue in the alternative that Plaintiffs are prohibited from requesting, in their civil action, more damages than they requested in their administrative claim, absent new evidence or intervening facts.

### III. Analysis
### A. Recharacterization of Motion

Motions to dismiss for failure to satisfy the relevant statute of limitations are properly characterized as motions to dismiss for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6). *See* 5 Wright & Miller, *Federal Practice and Procedure* § 1357 p. 608. Rule 12(b) provides that if the court, in ruling on a motion to dismiss under 12(b)(6), permits the parties to introduce "matters outside the pleading," the motion "shall be treated as one for summary judgment and disposed of as provided in Rule 56."

---

1. Under 28 U.S.C.A. § 2675(a), a party aggrieved by governmental conduct may file a civil suit against the government only if the party has "first presented the claim to the appropriate Federal agency." An administrative claim is "presented" when the "claimant, his duly authorized agent or legal representative" files with the appropriate agency a Standard Form 95 containing the name of the claimant and the date, basis and amount of the claim. 28 C.F.R. § 14.2(a).

If the claim is presented on the claimant's behalf by an agent or legal representative, it must be signed and show the title of the agent or representative and "be accompanied by evidence of his authority to present a claim on behalf of claimant." 28 C.F.R. § 14.3(e).

Plaintiffs have submitted affidavits in support of their memorandum in opposition to Defendant's motion. In its reply memorandum, Defendant submitted exhibits, including medical records. Therefore, pursuant to Rule 12(b), the Court recharacterizes Defendants' motion to dismiss as a motion for summary judgment, and addresses it under the standards set out in Rule 56.

## B. Statute of Limitations

The Federal Tort Claims Act, 28 U.S.C. § 2401(b),[2] bars any tort claim against the United States unless it is presented in writing to the appropriate federal agency "within two years after such claim accrues." A claim "accrues" within the meaning of § 2401(b) when the plaintiff knows both of the existence of the injury and its probable cause. *United States v. Kubrick,* 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979). The Court must determine, therefore, when the Mondays knew that Christopher had been injured, and knew the probable cause of his injuries.

■ The injury for which the Mondays seek to recover is not merely the respiratory distress and complications Christopher suffered *at* birth, but the cerebral palsy they claim was caused *by* the traumatic birth. The Mondays knew, when Christopher was born or very shortly thereafter, that their son's birth had been traumatic, and that he had suffered serious post-natal illnesses. They claim that they did not knew he had *permanent* injuries, however, until ten months later, when he underwent a neurological exam and was diagnosed with cerebral palsy. They claim, on this basis, that the statute of limitations began running with the neurological exam and diagnosis of cerebral palsy, and not sooner.

Defendant claims that Plaintiffs' ignorance of the full extent of Christopher's injuries did not toll the statute of limitations. It claims, further, that the Mondays had a duty to inquire into the extent and likely cause of their son's difficulties, and

that their failure to do so did not toll the statute of limitations.

The United States Supreme Court has held that claimants, once informed of the essential facts of the injury and its probable cause, have a duty to inquire into the propriety of the treatment received. *United States v. Kubrick,* 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979). Post-*Kubrick* cases have broadened this duty to require claimants to inquire, in addition, into the *cause* of their injury. *See Arvayo v. United States,* 766 F.2d 1416 (10th Cir. 1985).

However, no court has yet interpreted *Kubrick* to require into the *existence* of the injury itself. Indeed, the duty created in *Kubrick* and its progeny arises *only* after the claimants know of the injury. Thus, courts generally determine the time of accrual to be the date upon which the claimant learns of the injury itself *and* of its probable medical cause. *See Kubrick* (plaintiff's cause of action accrued when he was informed that neomycin prescribed for femur infection caused hearing loss); *Robbins v. United States,* 624 F.2d 971 (10th Cir.1980) (cause accrued when plaintiff informed that Prednisone prescribed for psoriasis caused marks on back and legs, and should not have been prescribed to him); *Nicolazzo v. United States,* 786 F.2d 454 (1st Cir.1986) (cause accrued when doctors properly diagnosed plaintiff's hearing loss as side effect from 13–year–old head injury).

The record before the Court on Defendant's motion *does* show that the Mondays knew Christopher suffered complications at birth. It does *not* show, however, to the degree of certainty required for the Court to dismiss the Mondays' action, whether the Mondays knew or should have known, before the March 14, 1985 diagnosis of cerebral palsy, that their son had suffered *permanent* injuries.

The record shows that the Mondays "asked numerous questions" during post-natal conferences with Christopher's physi-

2. 28 U.S.C. § 2401(b) reads: "A tort claim against the United States shall be forever barred unless it is presented in writing to the appropri-

ate Federal agency within two years after such claim accrues."

cians. It suggests that the Mondays discussed Christopher's prognosis with his doctors. It does not show, however, whether the Mondays asked about of were informed of the risk of permanent injury. It does not reveal what prognosis Christopher's doctors shared with his parents.

It does not show whether, when Christopher was discharged from the hospital a week after his birth, he was suffering from lingering symptoms. It does not show whether, in the ten months between his discharge and his neurological examination, Christopher suffered from symptoms that put his parents on notice that he had suffered permanent injuries.

In short, it is factually unclear on the record before the Court on this motion whether the Mondays knew of Christopher's injuries—within the meaning of *Kubrick*—before the March 14, 1985 diagnosis of cerebral palsy. If, in fact, they did *not* know of their son's injuries until that date, their final administrative claim, filed November 6, 1986, was timely, and their action should not be dismissed.

Further, even if the Court were to determine that the Mondays knew of their son's injuries, within the meaning of *Kubrick*, from the moment he was born, the Court would not be justified in dismissing Plaintiffs' action at this juncture. The record is devoid of evidence that the Mondays knew of the probable *cause* of Christopher's injuries before the March 14, 1985 diagnosis of birth-related cerebral palsy.

The record does not show to the degree of certainty required for dismissal whether the Mondays knew that Christopher's injuries—immediate or long-term—were caused by the birth itself. It does not show whether doctors suggested a link between the traumatic birth and the injuries during post-natal conferences. The Court is unwilling to infer from this record that the Mondays' presence at their son's birth, and their knowledge of his post-birth illnesses, establish to a factual certainty that they perceived a link between the two.

Thus, it is unclear on the record before the Court on this motion whether the Mondays knew the probable cause of their son's injuries before the March 14, 1985 diagnosis of birth-related cerebral palsy. Until they knew of Christopher's injury *and* its probable cause, *Kubrick* imposed on the Mondays no duty to inquire into possible negligence. If they had no duty under *Kubrick* until March 14, 1985, their November 6, 1986 administrative claim was timely, and their action should not be dismissed.

## C. Amount of Damages Claimed

■ 28 U.S.C.A. § 2675(b) reads:
Action under this section shall not be instituted for any sum in excess of the amount of the claim presented to the federal agency, except where the increased amount is based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency, or upon allegation and proof of intervening facts, relating to the amount of the claim.

Because it is a portion of the Federal Tort Claims Act by which the federal government conditionally consents to suit, § 2675(b) must be strictly construed. *See United States v. Sherwood*, 312 U.S. 584, 590, 61 S.Ct. 767, 771, 85 L.Ed. 1058 (1941) (construing a portion of § 2 of the Tucker Act, now codified at 28 U.S.C. § 1346(a)(2)). Plaintiff bears the burden of proving newly discovered evidence or intervening facts to support a demand greater than the demand in the administrative claim. *DeGroot v. United States*, 384 F.Supp. 1178 (D.C. Iowa 1974).

Plaintiffs here requested, in their administrative claim, total damages of $10 million. In this action, they seek damages of $44 million.[3] They have not claimed that the increase reflects newly discovered evidence or intervening facts. In fact, they

---

**3.** Defendant alleges in its memorandum in support of the motion to dismiss that Plaintiffs here seek $35 million in damages. As the Court reads the Complaint, Plaintiffs seek damages of

$10 million each for Counts 1 through 4, and $1 million each for Counts 5 through 8, for a total of $44 million.

failed altogether to respond to Defendant's reduction claim in their opposition to Defendant's motion. They concede that they knew the full extent of Christopher's injuries when they filed their administrative claim, and have proffered nothing to support a $34 million increase in damages between the filing of the administrative claim and the filing of the instant action.

The Court finds, therefore, that Plaintiffs have failed to carry their burden of proof under 28 U.S.C.A. § 2675(b). As a consequence, their damages in the instant action shall be limited to $10 million, the amount requested in the administrative claim.[4]

### IV. Conclusion

Accordingly, the Court ORDERS that Defendant's Motion for Summary Judgment be, and it is hereby, DENIED. The Court further ORDERS that Plaintiffs' prayer for damages be reduced from $44 million to $10 million, pursuant to 28 U.S.C.A. § 2675(b).

---

**4.** In limiting the amount of damages Plaintiffs may recover, the Court does *not* resolve whether damages are appropriate or in what amount. It merely enforces the statutory cap on recovery set out in 28 U.S.C.A. § 2675(b).